JOHN MOOT[1] *vs.* DEPARTMENT OF ENVIRONMENTAL
PROTECTION & others.[2]

Middlesex. November 3, 2009. - March 12, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, BOTSFORD, & GANTS, JJ.

*Department of Environmental Protection. Trust,* Public trust. *License. Statute,*
Construction. *Real Property,* Restrictions.

Discussion of St. 2007, c. 168, § 1, an act exempting structures, uses, and
activities within landlocked tidelands from licensing under G. L. c. 91, the
waterways statute. [311-313]
This court concluded that St. 2007, c. 168, § 1, an act exempting structures,
uses, and activities within landlocked tidelands from licensing under G. L.
c. 91, the waterways statute, did not extinguish or relinquish public trust
rights in landlocked tidelands but, rather, provided an exemption for such
tidelands from c. 91 and, in so doing, validated a regulatory exemption
previously held invalid by this court in *Moot* v. *Department of Envtl.
Protection,* 448 Mass. 340 (2007) [313-315]; thus, a license was not neces-
sary for construction of a multiuse project on certain filled tidelands that
were landlocked, and a license issued in 1962, which contained a condition
requiring authorization for such construction on those tidelands, was no
longer enforceable [315].

CIVIL ACTION commenced in the Superior Court Department on
May 20, 2004.

Following review by this court, 448 Mass. 340 (2007), a mo-
tion for relief from judgment was heard by *Herman J. Smith,
Jr.,* J.

The Supreme Judicial Court granted an application for direct
appellate review.

*Thomas B. Bracken* for the plaintiff.

*Seth Schofield,* Assistant Attorney General, for Department of
Environmental Protection.

[1]Other plaintiffs who participated in earlier proceedings have not participated
in this appeal.

[2]North Point Cambridge Land Company, LLC; East Street, Inc., doing busi-
ness as Water Street Company; and Boston and Maine Corporation.

*Bruce E. Falby* for North Point Cambridge Land Company, LLC, & others.

*Paula M. Devereaux,* for NAIOP Massachusetts, amicus curiae, submitted a brief.

*Charles N. Le Ray, Mary K. Ryan, & Michael A. Leon,* for Real Estate Bar Association for Massachusetts & another, amici curiae, submitted a brief.

MARSHALL, C.J. In *Moot* v. *Department of Envtl. Protection,* 448 Mass. 340 (2007) (*Moot*), we concluded that a regulation promulgated by the Department of Environmental Protection (department) exempting landlocked tidelands from the licensing requirements of G. L. c. 91, the waterways statute, exceeded the department's authority and was thus invalid. The basis for our decision was that by exempting landlocked tidelands from the licensing requirements of G. L. c. 91, the department "relinquished its obligation to ensure that all nonwater-dependent uses of filled tidelands serve a 'proper public purpose,' as the Legislature has mandated." *Moot, supra* at 352. In the course of reaching that conclusion, we noted that any such relinquishment could come only from the Legislature. *Id.* at 352-353.

At issue was a decision by the department that exempted the construction of a multiuse project by the defendants North Point Cambridge Land Company, LLC; East Street, Inc., doing business as Water Street Company; and Boston and Maine Corporation (collectively, North Point) from the licensing requirements of G. L. c. 91. *Id.* at 341. Our decision reversed a Superior Court decision that affirmed the department's decision of negative applicability of G. L. c. 91, on the basis that the project site is located on landlocked tidelands. *Id.* at 345. Our decision also directed that judgment should enter in the Superior Court remanding the case to the department for further proceedings. *Id.* at 353. On request by the defendants, we later issued a stay of the entry of judgment after rescript in the Superior Court to permit the Legislature to take any action it might deem appropriate in light of our opinion.

In direct response to our opinion, the Legislature enacted "An Act relative to the licensing requirements for certain tidelands" (act), the purpose of which "is to exempt structures, uses and activities within landlocked tidelands from licensing

under chapter 91 of the General Laws." St. 2007, c. 168, § 1. Thereafter, the plaintiff sought relief from judgment in the Superior Court, asking the judge to find that the act exceeded the Legislature's authority and that the provisions of a 1962 license relevant to the North Point project site are valid and enforceable.[3] A Superior Court judge denied the plaintiff's motion and affirmed the underlying decision of the department exempting the project from the licensing requirements of G. L. c. 91. The plaintiff appealed. We granted the plaintiff's application for direct appellate review and now affirm.[4]

1. *Background.* We need not reiterate here the details of the North Point project, the project site, or the relevant provisions and purposes of G. L. c. 91, which are fully set forth in *Moot.* Instead, we turn directly to the act, the purpose of which "is to exempt structures, uses and activities within landlocked tidelands" from the licensing requirements of G. L. c. 91. St. 2007, c. 168, § 1. To effect this purpose, the act amended G. L. c. 91 by, among other things, specifically adding a provision to § 18 stating, "No license shall be required under this chapter for fill on landlocked tidelands, or for uses or structures within landlocked tidelands." St. 2007, c. 168, § 6. The act also amended the provision in § 18 requiring a public hearing "on any license application for nonwater dependent use of tidelands" such that no public hearing is now necessary for nonwater dependent uses of landlocked tidelands.[5] See St. 2007, c. 168, § 7. Furthermore, the act provides that decisions made pursuant to the regulatory exemption that we held invalid in *Moot* are to be considered valid "as if th[e] act

---

[3]To the extent that the plaintiff raised other issues in the motion for relief from judgment, those issues are not a part of this appeal.

[4]We acknowledge the amicus briefs submitted by the Real Estate Bar Association for Massachusetts and The Abstract Club; and NAIOP Massachusetts.

[5]The previous version of the relevant portion of § 18 stated that "[a] public hearing shall be held in the affected city or town on any license application for nonwater dependent uses of tidelands." G. L. c. 91, § 18, as amended through St. 1986, c. 348, §§ 3, 4. That provision now states: "A public hearing shall be held in the affected city or town on any license application for nonwater dependent uses of tidelands, except for landlocked tidelands." G. L. c. 91, § 18, as amended through St. 2007, c. 168, § 7 (inserting the words "except for landlocked tidelands").

had been in effect when such . . . determinations of applicability" of the regulation were issued. St. 2007, c. 168, § 10.[6]

The act also creates a new procedure for "public benefit review" by the Secretary of the Executive Office of Energy and Environmental Affairs (Secretary). Section 18B, a new section of G. L. c. 91, provides that the Secretary "shall conduct and complete a public benefit review for any proposed project" that is located on landlocked tidelands, and where the proposed project is required to file an environmental impact report pursuant to the Massachusetts Environmental Policy Act, G. L. c. 30, §§ 62-62I (MEPA). St. 2007, c. 168, § 8. Furthermore, the Secretary "may" conduct a public benefit review for any proposed project located on landlocked tidelands that is required to file an environmental notification form. *Id.* Pursuant to the regulations promulgated by the department relevant to the public benefit determination, the Secretary, "[i]n weighing the adequacy of the proposed public benefit, . . . shall place particular emphasis on the benefit to the public trust rights in tidelands." 301 Code Mass. Regs. § 13.04(3) (2008). The regulations further provide that the department "shall incorporate the public benefit determination . . . in its official record of the chapter 91 license," and that the Secretary's determination "shall not supersede, eliminate, or in any way impair the Department's exercise of its powers under chapter 91." 301 Code Mass. Regs. § 13.05 (2008).

Finally, the act added a new section to MEPA. St. 2007, c. 168, § 3. That section, G. L. c. 30, § 62I, requires a person proposing a new use or structure, or modification of an existing use or structure, within landlocked tidelands who is required to file an environmental notification form pursuant to G. L. c. 30,

---

[6]Section 10 of St. 2007, c. 168, provides in relevant part:

"[R]egulations issued by the [department] exempting landlocked tidelands from licensing before the effective date of this act are hereby validated and confirmed as if this Act had been in effect when such regulations and determinations of applicability were issued. Any fill, use or structure developed pursuant to such regulations shall not be subject to challenge on the ground that the [department] lacked the authority to issue such regulations and, any fill, use or structure hereafter developed pursuant to any such previously issued determination of applicability in the negative shall not be subject to review under [G. L. c. 91]."

§ 62A, to include "an explanation of the project's impact on the public's right to access, use and enjoy tidelands that are protected by chapter 91, and identify measures to avoid, minimize, or mitigate any adverse impact on such rights." The section further provides that "[a]ny measures identified by the secretary . . . shall be set forth in a certificate on the environmental notification form or a certificate on the environmental impact report, if the latter is applicable," and requires the proponent of the project to notify the department of the work and to provide the certificate to the department. *Id.* Additionally, the project proponent "shall comply with all obligations set forth in the certificate . . . , and the department shall have the authority to enforce such conditions." *Id.*

2. *Discussion.* The parties disagree as to the effect of the act. The plaintiff argues that the act exceeds the Legislature's authority because it effectively extinguishes and relinquishes public trust rights in landlocked tidelands without making the necessary explicit findings outlined by this court in *Opinions of the Justices*, 383 Mass. 895 (1981). The defendants, on the other hand, argue that the act does not extinguish and relinquish public trust rights in landlocked tidelands but rather exempts landlocked tidelands from the licensing requirements of G. L. c. 91. Alternatively, the defendants argue that the act does make the necessary findings to extinguish and relinquish those rights. Our review of legislative enactments is limited. See *Merriam* v. *Secretary of the Commonwealth*, 375 Mass. 246, 254-255 (1978) (discussing "limited scope of judicial review of legislative acts"). Although we are not unsympathetic to the plaintiff's view, we ultimately agree with the defendants that the act does not extinguish and relinquish public trust rights in landlocked tidelands.[7]

The Legislature, as we have previously stated, has the power to relinquish public trust rights in landlocked tidelands. See *Opinions of the Justices, supra* at 904-905. That power is not without limitation, and any legislation that relinquishes or extinguishes such rights must do so explicitly. *Id.* at 905.

"[T]he legislation must be explicit concerning the land

---

[7]To the extent that the judge determined that the act did relinquish and extinguish public trust rights in landlocked tidelands, we disagree with the basis for his decision, although we affirm the result.

> involved; it must acknowledge the interest being sur-
> rendered; . . . it must recognize the public use to which
> the land is to be put; . . . [it] must be for a valid public
> purpose, and, where there may be benefits to private par-
> ties, those private benefits must not be primary but merely
> incidental to the achievement of the public purpose."

*Id.* As we noted in *Moot*, G. L. c. 91, as it then existed, prior to
the 2007 amendments, contained "no language suggesting that
the statute is intended to relinquish or extinguish the public's
right in any tidelands, filled or unfilled, landlocked or otherwise."
*Moot*, *supra* at 348. The 2007 amendments do not change that.
Although the act may meet some of the requirements set forth
in *Opinions of the Justices*, *supra*, it does not anywhere explicitly
set forth a legislative intent to relinquish or extinguish the
public's rights in landlocked tidelands. See *Moot*, *supra* at 348-
349, for a discussion of acts that do explicitly relinquish and
extinguish such rights.[8]

Rather, the act provides an exemption for landlocked tidelands
from the licensing scheme of G. L. c. 91, and in so doing validates
the regulatory exemption that we previously held to be invalid
in *Moot*. As set forth in more detail above, the act amended
G. L. c. 91, § 18, by adding certain provisions specific to land-
locked tidelands. Section 18 no longer requires a license for fill
on landlocked tidelands, or for uses or structures within such
tidelands. This does not, however, entirely dispose of the public's
rights in landlocked tidelands, which G. L. c. 91 continues to
require the department to "preserve and protect." G. L. c. 91,
§ 2. The revised statute, taken together with the revisions to
MEPA also set forth in the act, requires public benefit review
and determination in certain circumstances involving landlocked
tidelands. Under G. L. c. 30, § 62I, a proponent of a project

---

[8]The defendants argue that the act is "explicit concerning the land involved"
because it is applicable only to landlocked tidelands. Because we conclude
that the act does not relinquish and extinguish the public rights in landlocked
tidelands, we need not decide the issue whether an act that otherwise meets
the requirements set forth in *Opinions of the Justices*, 383 Mass. 895 (1981),
and that explicitly seeks to relinquish and extinguish public trust rights might
validly do so by referring to a specific type of property (e.g., landlocked
tidelands) rather than to a specific piece of land. The defendants' interpreta-
tion of this issue may be reasonable in some circumstances.

involving landlocked tidelands who is required to file an environmental notification form (and an environmental impact report if applicable) must include an explanation of the project's impact on the public's right to access, use, and enjoy tidelands and "identify measures to avoid, minimize, or mitigate any adverse impact on such rights." Under G. L. c. 91, § 18B, in turn, the Secretary shall conduct a public benefit review of any proposed project that is "geographically located on landlocked tidelands" and is required to file an environmental impact report. For projects involving environmental notification forms, the Secretary may, but is not required to, complete such review. While these provisions will not apply to all proposed projects involving the use of landlocked tidelands — projects that do not require an environmental notification form or an environmental impact report are not subject to public benefit review — they do provide some departmental oversight of the public rights in landlocked tidelands and are indicative of a lack of any legislative intent to extinguish entirely and relinquish those rights.

Having determined that the act does not extinguish and relinquish public trust rights in landlocked tidelands, we turn now to the plaintiff's claim that the 1962 license issued to the Boston and Maine Railroad that allowed the filling of flowed tidelands in what is now the North Point project site remains valid and enforceable. In particular, the license contains a condition that "no structures shall be placed on the fill except with further license authorization" from the Department of Public Works, and the plaintiff thus argues that North Point must seek license authorization for its project. We agree with the defendants that such a license is no longer necessary. The tidelands that were filled pursuant to the 1962 license are now landlocked tidelands.[9] As such, they are now exempt from the licensing requirements of G. L. c. 91. Furthermore, pursuant to the act, the department's prior decision that the project site is not subject to G. L. c. 91 licensing (because it consists of landlocked tidelands) is not subject to review. St. 2007, c. 168, § 10.[10]

3. *Conclusion.* For the foregoing reasons, we agree with the

---

[9]The plaintiff no longer contests the department's earlier decision that the tidelands in question are landlocked. See *Moot*, *supra* at 345 n.13.

[10]See note 6, supra.

decision of the Superior Court judge, except as to his determination that the act, St. 2007, c. 168, contains the findings necessary to, and does, relinquish and extinguish the public's rights in landlocked tidelands. In all other respects, including affirming the department's decision that the North Point project is exempt from G. L. c. 91 licensing, the decision is affirmed.

*So ordered.*