NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12200
SJC-12205


 MARY E. DALEY, personal representative,[1] vs.  SECRETARY OF THE
    EXECUTIVE OFFICE OF HEALTH AND HUMAN SERVICES & another.[2]

    LIONEL C. NADEAU  vs.  DIRECTOR OF THE OFFICE OF MEDICAID.



        Worcester.      January 5, 2017. - May 30, 2017.

  Present:  Gants, C.J., Lenk, Hines, Gaziano, Lowy, & Budd, JJ.


Medicaid.  Trust, Irrevocable trust.  Real Property, Life
    estate, Ownership.




    Civil action commenced in the Superior Court Department on
February 11, 2015.

    The case was heard by Dennis J. Curran, J., on a motion for
judgment on the pleadings.

    The Supreme Judicial Court granted an application for
direct appellate review.

    Civil action commenced in the Superior Court Department on
December 23, 2014.

    The case was heard by Shannon Frison, J., on a motion for
judgment on the pleadings.

_____

    [1] Of the estate of James Daley.
    [2] Director of the Office of Medicaid.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

Lisa Neeley (Patrick Tinsley also present) for Lionel C. Nadeau.

Brian E. Barreira for Mary E. Daley.

Ronald M. Landsman, of Maryland, for National Academy of Elder Law Attorneys, Inc.

Elizabeth Kaplan & Julie E. Green, Assistant Attorneys General, for Director of the Office of Medicaid & another.

Patricia Keane Martin, for National Academy of Elder Law Attorneys (Massachusetts Chapter), was present but did not argue.

Leo J. Cushing & Thomas J. McIntyre, for Real Estate Bar Association for Massachusetts, Inc., amicus curiae, submitted a brief.

GANTS, C.J.  These two cases require this court to navigate the labyrinth of controlling statutes and regulations to determine whether applicants are eligible for long-term care benefits under the Federal Medicaid Act (act) where they created an irrevocable trust and deeded their primary asset -- their home -- to that trust but retained the right to reside in and enjoy the use of the home for the rest of their life.  The Director of the Massachusetts Office of Medicaid (MassHealth) determined that the applicants in these two cases were not eligible for long-term care benefits because their retention of a right to continue to live in their homes made the equity in their homes a "countable" asset whose value exceeded the asset eligibility limitation under the act.  The applicants unsuccessfully challenged MassHealth's determinations in the

Superior Court pursuant to G. L. c. 30A, § 14. We granted Mary
E. Daley's application for direct appellate review and
transferred Lionel C. Nadeau's appeal to this court on our own
motion. We conclude that neither the grant in an irrevocable
trust of a right of use and occupancy in a primary residence to
an applicant nor the retention by an applicant of a life estate
in his or her primary residence makes the equity in the home
owned by the trust a countable asset for the purpose of
determining Medicaid eligibility for long-term care benefits.
We therefore vacate the judgments that rely on such a finding
and remand the matters to MassHealth for findings regarding two
other possible sources of countable assets contained in the
trusts.[3]

Background. The act, enacted in 1965 as Title XIX of the
Social Security Act, 42 U.S.C. §§ 1396 et seq., created a
cooperative State and Federal program to provide medical
assistance to individuals who cannot afford to pay for their own
medical costs. See Arkansas Dep't of Health & Human Servs. v.
Ahlborn, 547 U.S. 268, 275 (2006). The general administration
of Medicaid is entrusted to the United States Secretary of

---

[3] We acknowledge the amicus brief submitted by the National
Academy of Elder Law Attorneys, Inc., in both cases; the amicus
brief submitted by the Real Estate Bar Association for
Massachusetts, Inc., in Mary E. Daley's case; and the amicus
brief submitted by the National Academy of Elder Law Attorneys
(Massachusetts Chapter) in Lionel C. Nadeau's case.

Health and Human Services, who in turn exercises authority through the Centers for Medicare and Medicaid Services (CMS). Id.[4] Although the Medicaid program is voluntary for States, participating States must comply with certain requirements imposed by the act and regulations promulgated by the Secretary through CMS. See Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 502 (1990). Massachusetts has opted to participate in Medicaid via the establishment of a State Medicaid program known as MassHealth. See G. L. c. 118E, § 9 (establishing program of medical assistance "pursuant to and in conformity with the provisions of Title XIX").

Participating States are required to cover the costs of care for the "categorically needy," which the act defines as those individuals who are unable to cover the costs of their basic needs and who already receive or are eligible for certain forms of public assistance. See Roach v. Morse, 440 F.3d 53, 59 (2d Cir. 2006). States have the option to cover the costs of care for the "medically needy," Haley v. Commissioner of Pub. Welfare, 394 Mass. 466, 467-468 (1985), which the act defines as people who have income and resources to cover the costs of their

---

[4] Until 2001, the Centers for Medicare and Medicaid Services were known as the Health Care Financing Administration. See Centers for Medicare & Medicaid Services Statement of Organization, Functions and Delegations of Authority, and Reorganization Order, 66 Fed. Reg. 35,437-03 (2001).

basic needs but not their necessary medical care.  See 42 U.S.C. § 1396a(a)(10)(C).

Medicaid has become one of the largest programs in the Federal budget as well as a major expenditure for State governments, which must finance a significant portion of Medicaid benefits on their own.  See R. Rudowitz, Kaiser Commission on Medicaid and the Uninsured, Medicaid Financing: The Basics (Dec. 2016) (Medicaid is third largest domestic program in Federal budget, exceeded only by Medicare and Social Security); Massachusetts Medicaid Policy Institute & Massachusetts Budget and Policy Center, Understanding the Actual Cost of MassHealth to the State (Nov. 2014) (reporting net cost of MassHealth and health reform programs as twenty-three per cent of State budget).  As of 2015, the Medicaid program provided health and long-term care coverage to nearly 70 million low-income Americans, including, among many others, poor senior citizens who are also covered by Medicare.  See Kaiser Family Foundation, Medicaid at 50 (2015), http://kff.org/medicaid /report/medicaid-at-50 [https://perma.cc/TK7Q-72KR].

The demand for Medicaid long-term care benefits, which cover nursing home care as well as other forms of personal long-term care services, has grown steadily as a result of our country's aging population and the expense of paying privately for nursing homes or other long-term care.  See Cohen v.

Commissioner of the Div. of Med. Assistance, 423 Mass. 399, 402

(1996), cert. denied sub nom. Kokoska v. Bullen, 519 U.S. 1057

(1997).  See also Bernstein, With Medicaid, Long-Term Care of

Elderly Looms as a Rising Cost, N.Y. Times, Sep. 6, 2012,

http://www.nytimes.com/2012/09/07/health/policy/long-term-care-

looms-as-rising-medicaid-cost.html [https://perma.cc/2JB6-L6NM]

(describing Medicaid as "the only safety net for millions of

middle-class people whose needs for long-term care, at home or

in a nursing home, outlast their resources").  A recent survey

estimated that the median annual cost of nursing home care for a

senior in a semiprivate room in Massachusetts was more than

$128,000.  See Genworth 2015 Cost of Care Survey, Massachusetts,

https://www.genworth.com/dam/Americas/US/PDFs/Consumer/corporate

/cost-of-care/118928MA_040115_gnw.pdf [https://perma.cc/2RNC-

6P5G].  Private long-term care insurance can cost more than

$3,000 annually.  See AARP, Understanding Long-Term Care

Insurance (May 2016), http://www.aarp.org/health/health-

insurance/info-06-2012/understanding-long-term-care-insurance

.html [https://perma.cc/56MK-DYZ2].  Because many individuals

cannot afford these expenses, Medicaid pays for the care of two-

thirds of people in nursing homes in the United States.  See

Zernike, Goodnough, & Belluck, In Health Bill's Defeat, Medicaid

Comes of Age, N.Y. Times, Mar. 27, 2017.  See also E.L. Reaves &

M. Musumeci, Kaiser Commission on Medicaid and the Uninsured,

Medicaid and Long-Term Services and Supports: A Primer (Dec. 2015), http://kff.org/medicaid/report/medicaid-and-long-term-services-and-supports-a-primer [https://perma.cc/KJZ5-5WJR]. The cost of Medicaid's long-term care benefit is expected to rise by fifty per cent over the next decade, and State and Federal officials are reportedly "scrambling to control spending." Gorman & Feder Ostrov, Long-Term Care Is an Immediate Problem -- For the Government, Kaiser Health News, Aug. 1, 2016, http://khn.org/news/long-term-care-is-an-immediate-problem-for-the-government [https://perma.cc/N9V9-5QKE].

In order to qualify for Medicaid in Massachusetts, MassHealth requires that "[t]he total value of countable assets owned by or available to" an individual applicant not exceed $2,000. 130 Code Mass. Regs. § 520.003(A)(1) (2014).[5] For a

---

[5] This asset limit is not codified in Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 et seq. Instead, Federal law and guidance from Federal regulators generally instruct the State Medicaid programs that their treatment of applicants' resources in determining eligibility may not be more restrictive than the methodology that would be employed under the Federal supplemental security income (SSI) program. See 42 U.S.C. § 1396a(a)(10)(C)(i); State Medicaid Manual, Health Care Financing Administration Pub. No. 45-3, Transmittal 64 § 3257.B.4 (Nov. 1994). But see Mistrick v. Division of Med. Assistance & Health Servs., 154 N.J. 158, 174-175 (1998) (specific Congressional legislation regarding Medicaid eligibility supersedes general rule that State Medicaid eligibility rules may be "no more restrictive" than SSI). The asset limit for SSI beneficiaries is $2,000. See 42 U.S.C. § 1382(a).

couple living together, the limit is $3,000. 130 Code Mass. Regs. § 520.003(A)(2) (2014). This asset limit often requires applicants to "spend down" or otherwise deplete their resources to qualify for Medicaid long-term care benefits when they enter a nursing home. See Lebow v. Commissioner of the Div. of Med. Assistance, 433 Mass. 171, 172 (2001).[6]

Through "Medicaid planning," individuals attempt to transfer or otherwise dispose of their assets long before they need long-term care so that, when the need arises, they may satisfy the asset limit and qualify for Medicaid benefits. In essence, the purpose of Medicaid planning is to enable persons whose assets would otherwise render them ineligible for long-term care benefits to become eligible for Medicaid benefits by transferring to their children or other loved ones the assets they would otherwise use to pay for long-term care, shifting to the taxpayers the burden of paying for that care. See generally Cohen, 423 Mass. at 402-403. As a report of the House of Representatives's committee on energy and commerce declared in 1985, "When affluent individuals use Medicaid qualifying trusts and similar 'techniques' to qualify for the program, they are

---

[6] As we discuss later in this opinion, an applicant's principal residence is generally not considered to be a countable asset in the eligibility determination and thus an applicant does not have to sell his or her home in order to qualify for Medicaid long-term care benefits. See 20 C.F.R. § 416.1212(b); 130 Code Mass. Regs. §§ 520.007(G)(3), 520.008(A) (2014).

diverting scarce Federal and State resources from low-income elderly and disabled individuals, and poor women and children." H.R. Rep. No. 265, 99th Cong., 1st Sess., pt. 1, at 72 (1985), quoted in Cohen, supra at 404.

Congress has imposed two substantial constraints on such Medicaid planning. The first is the so-called "look-back" rule, which imposes a penalty for any asset transfer for less than fair market value made by an individual within five years of the individual's application for Medicaid benefits. See 42 U.S.C. § 1396p(c)(1)(B)(i). See generally D. Westfall, G.P. Mair, J.R. Buckles, N.M. Oliveira, & W. Murieko, Estate Planning Law & Taxation § 13.05 (2017) (Westfall). In its present form, the "look-back" rule provides that, if such a transfer occurs, the applicant is ineligible for Medicaid benefits for a period of time determined by dividing the value of the transfer by the average monthly cost of the nursing home facility. See 42 U.S.C. § 1396p(c)(1)(E). Thus, if an applicant transfers $100,000 in assets during the look-back period, in a State where the average monthly cost of a nursing home is $10,000, the applicant will be ineligible for Medicaid benefits for ten months. See Westfall, supra.

Second, where an applicant has created an irrevocable trust and transferred assets to that trust, "if there are any circumstances under which payment from the trust could be made

to or for the benefit of the individual, the portion of the corpus from which, or the income on the corpus from which, payment to the individual could be made shall be considered resources available to the individual, and payments from that portion of the corpus or income (I) to or for the benefit of the individual, shall be considered income of the individual, and (II) for any other purpose, shall be considered a transfer of assets by the individual."  42 U.S.C. § 1396p(d)(3)(B)(i).  This is commonly referred to as the "any circumstances" test.  See Heyn v. Director of the Office of Medicaid, 89 Mass. App. Ct. 312, 315 & n.7 (2016).[7]  The effect of the test is that if the trustee is afforded even a "peppercorn of discretion" to make payment of principal to the applicant, or if the trust allows such payment based on certain conditions, then the entire amount that the applicant could receive under "any state of affairs" is the amount counted for Medicaid eligibility.  See Cohen, 423 Mass. at 413.[8]

---

[7] The cognate Massachusetts regulation states:  "Any portion of the principal or income from the principal (such as interest) of an irrevocable trust that could be paid under any circumstances to or for the benefit of the individual is a countable asset."  130 Code Mass. Regs. § 520.023(C)(1)(a) (2014).

[8] To illustrate the operation of this rule, Federal regulators provide the example of a trust containing $50,000 in principal under which payment of principal may be made to the Medicaid applicant only in the event that the applicant requires a heart transplant.  Because it is possible the applicant could

Under the "any circumstances" test, where the grantor of the irrevocable trust gives the trustee any "leeway to respond to emergency and unexpected circumstances," the total amount available to be paid to address such circumstances is counted as fully available to the grantor, even if the trust provisions otherwise limit the trustee's discretion to pay for long-term care. See id. at 418-420. Consequently, where the terms of an irrevocable trust give the trustee discretion to pay both income and principal to the grantor for various purposes, but limit that discretion in an attempt to assure the grantor's eligibility for public assistance despite the considerable resources otherwise available to the grantor, the full amount of the trust, both principal and income, is the amount deemed available for purposes of determining Medicaid eligibility. Id. at 421-422.

The "any circumstances" test is qualified by an important caveat:  if the amounts that may be paid to the Medicaid applicant come only from the income of the trust, those income payments do not render the principal of the trust available as an asset; rather, they are treated as income that may affect the amount of Medicaid benefits to be received but not the

---

require a heart transplant, "this full amount is considered as payment that could be made under some circumstances, even though the likelihood of payment is remote."  See State Medicaid Manual, Health Care Financing Administration Pub. No. 45-3, Transmittal 64 § 3259.6(E) (Nov. 1994).

applicant's eligibility for such benefits.  See Guerriero v. Commissioner of the Div. of Med. Assistance, 433 Mass. 628, 632 n.6 (2001); 130 Code Mass. Regs. § 520.026 (2013).  See also J.A. Bloom & S.M. Cohen, Nursing Home MassHealth Eligibility, in Estate Planning for the Aging or Incapacitated Client in Massachusetts § 26.3.2 (Mass. Cont. Legal Educ. 4th ed. 2012 & Supp. 2015) (explaining general rule that anyone whose income is less than monthly cost of his or her nursing home may be eligible for MassHealth).

The application of this labyrinth of statutes and regulations is best understood by examples.  If a married couple without any savings forgoes Medicaid planning and continues jointly to own in fee simple a single family home, then when one spouse needs long-term care and applies for MassHealth benefits, the applicant's primary residence is not a countable asset for MassHealth eligibility purposes, so long as its value does not exceed an annually adjusted limit (currently $828,000).  See 130 Code Mass. Regs. § 520.008(A) (2013); 130 Code Mass. Regs. § 520.007(G)(3) (2014).  See also 20 C.F.R. § 416.1212(b) (SSI regulation).[9]  Thus, the spouse may be admitted to a nursing home and be covered by MassHealth without having to sell the home.

---

[9] If the applicant's spouse, child under the age of twenty-one, disabled child, or caretaker child, among others, remains living in the home, the value of the home will not be counted even if it exceeds the limit.  130 Code Mass. Regs. § 520.007(G)(8)(b) (2013).

However, Federal law requires that MassHealth must attempt to reclaim the costs of long-term care benefits provided to such an applicant from the applicant's estate after his or her death. 42 U.S.C. § 1396p(a), (b).  See 130 Code Mass. Regs. § 515.011(A) (2014).  As a result, where the house is the only asset in the applicant's estate and is sold by the estate after both spouses have died, the children will be able to inherit only the proceeds of the sale that exceed the amount of the MassHealth recovery claim.

If a married couple who owns no primary residence but has substantial liquid assets engages in Medicaid planning, they could create an irrevocable trust and transfer all of their assets to that trust.  If, under the terms of the trust, the trustee were authorized to pay them only income from the trust and could not under any circumstance pay them a penny of principal, and if the transfer to the trust complied with the "look-back" rule because it occurred more than five years before either spouse applied to MassHealth for long-term care benefits, the applicant would be eligible for such benefits because the assets of the trust would not be countable as his or her assets. See Cohen, 423 Mass. at 419-420 (where trust is written to deprive trustee of any discretion to pay principal and allows payment only of income, principal will not be counted as assets for Medicaid purposes); Heyn, 89 Mass. App. Ct. at 314 (where

properly structured, irrevocable trust may be used to place assets beyond grantor's reach and permit grantor to be eligible for Medicaid benefits).

In essence, a wealthy person may decide five years in advance of applying for Medicaid to either give away all of his or her assets to the children or transfer them to an irrevocable trust with the children as beneficiaries, reserving only the receipt of income, and therefore become someone with less than $2,000 in assets who is eligible for Medicaid benefits.  The inclusion of the primary residence among the assets transferred to the irrevocable trust allows the grantor to avoid the estate recovery claim against his or her primary residence that would occur had the grantor obtained Medicaid long-term care benefits and continued to own the home until it was transferred to his or her heirs as part of the probate estate.

Although the transfer of assets to an irrevocable trust through Medicaid planning offers substantial benefits to the grantor, it also poses considerable risks.  Having been stripped of all assets, the grantor may be unable to pay unforeseen nonmedical expenses, and may need to look to children or other relatives for payment.  If the grantor were to require nursing home care sooner than expected, he or she would face a significant penalty under the look-back rule.  See A.K. Dayton, J.A. Garber, R.A. Mead, & M.M. Wood, Advising the Elderly Client

§ 29.82 (2016) ("planning only for Medicaid eligibility severely restricts planning options for other goals, and often the adverse impact of Medicaid planning outweighs the benefit if the client is advised thoroughly . . . [and] consideration should be given to . . . possible loss of autonomy, pride, and dignity" involved in process). If the grantor of the irrevocable trust leaves open even a "peppercorn" of discretion for the trustee to pay the grantor from the principal of the trust under any circumstance, the entire principal of the trust will be deemed available to the applicant and therefore will be treated as a "countable asset," making the applicant ineligible for Medicaid benefits. Where the grantor transfers his or her primary residence to the irrevocable trust, the value of the home, which would not be a countable asset if he or she were to continue to own it (provided its value does not exceed $828,000), would become a countable asset if it were found to be among the "resources available to the individual" under 42 U.S.C. § 1396p(d)(3). And if the terms of the trust were to bar the trustee from paying the grantor's nursing home expenses, the grantor might have no ability to pay for long-term care.

The risks of Medicaid planning are highlighted by these two cases, where the plaintiffs challenge the determinations by MassHealth that their primary residence was a countable asset that rendered them ineligible to receive Medicaid long-term care

benefits because they had transferred ownership of the home to an irrevocable trust but retained the ability to reside in their home for the balance of their life.  A key difference between these two cases is the property interest that was transferred to the irrevocable trust:  in one, the home was transferred in fee simple but the terms of the trust granted the settlors the right of use and occupancy for their lifetimes; in the other, the settlors retained a life estate in the home and transferred only the remainder interest to the irrevocable trust.  We look now to the terms of the irrevocable trust at issue in each case and to the MassHealth determinations.

Nadeau Trust.  On March 27, 2001, plaintiff Lionel C. Nadeau and his wife (collectively, Nadeaus) deeded their primary residence in Webster to an irrevocable trust (Nadeau Trust) in return for nominal consideration, naming their daughter as sole trustee.  Under the terms of the trust, the trustee may pay to the Nadeaus, or on their behalf, whatever income she determines in her sole discretion to be necessary for their "care and well-being."  The trustee, apart from two exceptions, must hold the principal until the termination of the trust, which shall occur upon the death of the Nadeaus or when the trustee, in her sole discretion, determines that the trust should be terminated.  The first exception is that the Nadeaus may appoint "all or any part of the trust property then on hand to any one or more charitable

or non-profit organizations over which [they] have no controlling interest."  The second is that the trustee may distribute principal to the Nadeaus "to the extent that the income of the trust generates a tax liability" so that they may pay that tax liability.  As earlier mentioned, the terms of the trust grant the Nadeaus "the right to use and occupy any residence that may from time to time be held" by the trust.  Upon termination of the trust, the "trustee shall . . . [p]ay the remaining principal and undistributed income in equal shares to [the Nadeaus'] children."

Thirteen years later, and after the passing of his wife, Nadeau was admitted to a skilled nursing facility and applied for MassHealth long-term care benefits.  At the time, the assessed value of the residence held by the Nadeau Trust was $173,700, and Nadeau, then eighty-nine years old, had only $168.15 in cash assets.  MassHealth denied Nadeau's application based on its finding that the home remained a "countable asset," placing Nadeau above the $2,000 asset limit for long-term care eligibility.  MassHealth determined that he needed to spend down $171,868.15 of his assets in order to qualify for the requested benefits.

Daley Trust.  On December 19, 2007, Mary E. Daley and her husband (collectively, Daleys) deeded their primary residence in Worcester to their children as trustees of an irrevocable trust

(Daley Trust) in return for consideration of less than one hundred dollars, but retained a life estate in the property. Under the terms of the trust, the trustees are to pay to Daley or her husband "so much of the net income of the Trust as either Donor shall request in writing," but "[t]he Trustee[s] shall have no authority or discretion to distribute principal of the Trust to or for the benefit of either Donor." However, as with the Nadeau Trust, the trustee may pay principal as needed to satisfy any tax obligation arising from the payment of income to the Daleys.

Six years later, Daley's husband was admitted to a skilled nursing home; he applied for MassHealth long-term care benefits on February 21, 2014. At the time, he was eighty-seven years old, he had $18,176 in a bank account, and the principal of the Daley Trust had a value of $150,943. Daley was still living in the home. MassHealth denied her husband's application because it found that the trust principal was countable. While Daley was permitted a spousal resource allowance of $117,240, the value of the residence still placed her husband about $50,000 over the $2,000 eligibility limit.

In both cases, the MassHealth determination was appealed to a MassHealth hearing officer, who upheld the determination by finding that, because the applicant retained the ability to reside in the home, the home is "available" to the applicant and

must be deemed a countable asset under 130 Code Mass. Regs. § 520.023(C)(1)(d), which provides:

> "The home or former home of a nursing-facility resident or spouse held in an irrevocable trust that is available according to the terms of the trust is a countable asset. Where the home or former home is an asset of the trust, it is not subject to the exemptions of 130 [Code Mass. Regs. §] 520.007(G)(2) or (G)(8)."[10]

The hearing officers also found that the provision in the trusts that permit the trustee to pay the grantors' tax obligations arising from the payment of trust income does not render the entirety of the trust principal available under the "any circumstances" test. They specifically did not reach the issue of how much of the principal could be paid in that circumstance and therefore become countable, declaring that, if eligibility were to rest on that determination, the matter would have to be remanded to MassHealth to make such findings.

---

[10] The exemptions in these two provisions apply only to "real estate owned by the individual and the spouse." 130 Code Mass. Regs. § 520.007(G)(1). Under 130 Code Mass. Regs. § 520.007(G)(2), the value of real estate is exempt as a countable asset for nine months after the date of notice by MassHealth provided that the applicant executes an agreement within thirty days of the date of notice to sell the property at fair market value. Under 130 Code Mass. Regs. § 520.007(G)(8), where an applicant moves out of his or her home with no intent to return in order to enter a medical institution where placement is expected to continue for at least thirty days, the home becomes a countable asset unless a spouse, a child who is less than twenty-one years of age, a child who is blind or permanently and totally disabled, or other designated relatives reside in the home.

Discussion.  The Medicaid program in Massachusetts was established "pursuant to and in conformity with the provisions of" the act.  G. L. c. 118E, § 9.  If a person meets the Federal financial eligibility requirements for Medicaid, MassHealth may not deny the person long-term care benefits.  Id. ("[P]rovided that such persons meet the financial eligibility requirements of [the act], . . . long-term care services shall be available to otherwise eligible persons whose income and resources are insufficient to meet the costs of their medical care as determined by the financial eligibility requirements of the program").  See Cruz v. Commissioner of Pub. Welfare, 395 Mass. 107, 113 (1985) ("The language of this section clearly indicates that the Legislature intended the [Medicaid] benefits program to comply with the Federal statutory and regulatory scheme" [citation omitted]).  "When there is a conflict between State and Federal regulations, the Legislature intended that [MassHealth] comply with the Federal rule."  Cruz, supra.

Under Federal law, "[f]or purposes of determining an individual's eligibility for, or amount of, benefits under a State plan under [the act] . . . , the rules specified in paragraph (3) shall apply to a trust established by such an individual."  42 U.S.C. § 1396p(d)(1).  "[T]he rules specified in paragraph (3)" provide that "if there are any circumstances under which payment from the trust could be made to or for the

benefit of the individual, the portion of the corpus from which, or the income on the corpus from which, payment to the individual could be made shall be considered resources available to the individual."  42 U.S.C. § 1396p(d)(3).  Therefore, the issue we must decide is whether 130 Code Mass. Regs. § 520.023(C)(1)(d), which MassHealth interprets to mean that the equity in a home that is part of the corpus of an irrevocable trust is a countable asset where the grantor of the trust retains the authority to reside in or otherwise enjoy the use of the home, is consistent with 42 U.S.C. § 1396p(d)(3).

The plaintiffs contend that § 1396p(d)(3) makes an asset in the corpus of an irrevocable trust countable only where there are circumstances in which principal from the trust might be paid to them or for their benefit.  They contend that, because they can only reside in the home but not reach any of the equity in the home under the trust, the equity should not be countable as an asset because it may not be paid to them.  MassHealth argues that interpretive guidance from the Health Care Financing Administration (HCFA)[11] in its State Medicaid Manual (Manual), which provides instruction to State officials in applying the provisions of Federal Medicaid law, indicates that a right to use and occupancy can be a form of "payment" to a Medicaid

---

[11] See note 4, supra.

applicant.  Transmittal 64, issued in November, 1994, includes a section entitled "Treatment of Trusts," which states:

> "For purposes of this section a payment from a trust is a disbursal from the corpus of the trust or from income generated by the trust which benefits the party receiving it.  A payment may include actual cash, as well as noncash or property disbursements, such as the right to use and occupy real property."

State Medicaid Manual, HCFA Pub. No. 45-3, Transmittal 64 § 3259.1.A.8 (Nov. 1994).

The Manual is comprised of the various transmittals issued by HCFA and, later, by CMS. The transmittals contained in the Manual do not carry the force of regulations and are not entitled to the deference that we give to regulations that reflect an agency's interpretation of a statute it is obliged to enforce.  See Chevron, U.S.A., Inc. v. Natural Resources Defense Counsel, Inc., 467 U.S. 837, 845 (1984); Springfield v. Department of Telecomm. & Cable, 457 Mass. 562, 567-568 (2010). However, we consider such guidance carefully for its persuasive power.  See Wos v. E.M.A. ex rel. Johnson, 133 S. Ct. 1391, 1402 (2013) (interpretations contained in policy statements, agency manuals, and enforcement guidelines lack force of regulations and "do not warrant Chevron-style deference," but are "'entitled to respect' in proportion to their 'power to persuade'" [citations omitted]); Atlanticare Med. Ctr. v. Commissioner of the Div. of Med. Assistance, 439 Mass. 1, 9 & n.12 (2003).

We conclude that HCFA Transmittal 64 accurately interprets the meaning of "payment from the trust" in 42 U.S.C. § 1396p(d)(3). We also conclude that MassHealth has misinterpreted the meaning of these words in both the statute and the transmittal. Section 1396p(d)(3) recognizes that a "payment from the trust" may be made from the "corpus" of the trust or from "income on the corpus." Where a home is transferred to a trust, the home becomes another asset of the trust. Like any other asset, a home adds to the corpus of the trust, in that it may be sold for its fair market value; a home also increases the trust's capacity to generate income, in that rent may be collected for its use and occupancy. Where the trustee retains the discretion to pay income produced from the corpus to the grantors, as in the Nadeau and Daley Trusts, the trustee may pay any rental income earned from any real estate in the corpus of the trust to the grantors. Where the terms of the trust, as in the Nadeau Trust, grant a right of use and occupancy to the grantors for their lifetime, the grantors receive from the trust the right to receive any income that may be generated from the rental of the home, as well as the right to forgo that rental income by residing in the home themselves. See Hinckley v. Clarkson, 331 Mass. 453, 454-455 (1954) (right of use and occupancy grants "right to the income of the property [for] life," but not right to "alienate or consume" property).

See also <u>Langlois</u> v. <u>Langlois</u>, 326 Mass. 85, 87-88 (1950).  HCFA Transmittal 64 accurately recognizes that, where a trust grants the use or occupancy of a home to the grantors, it is effectively making a payment to the grantors in the amount of the fair rental value of that property.

To illustrate with an example, if a grantor transfers to an irrevocable trust ownership of a condominium unit and the trustee decides to rent the unit to a third person and pay the rental income to the grantor, there is a payment of rental income from the trust to the grantor.  If the grantor instead exercises his or her right of use and occupancy under the terms of the trust, and decides to reside in the unit or permit a family member to reside there without the payment of rent, the fair market value of the rent that otherwise would have been earned and treated as actual trust income is deemed paid to the grantor under Transmittal 64.

This payment, however, is not a payment from the corpus of the trust; the grantors do not have the power through their right of use and occupancy to sell the property under any circumstances.  It is instead a payment from the "income on the corpus."  Such payments, whether actually received as rental income or imputed as the fair market rental value of the grantors' occupancy of the home, may be countable as income of the grantors, but the value of the home is not thereby countable

as their asset.[12]  Such payments, therefore, do not affect an applicant's eligibility for Medicaid long-term care benefits, but they may affect how much the applicant is required to contribute to the payment for that care.  Just as the payment of income from the liquid assets of an irrevocable trust does not make those assets "available to the individual" under § 1396p(d)(3) and therefore countable assets for purposes of Medicaid eligibility, the payment of what is essentially rental income from real estate owned by the trust does not make the equity in that real estate a countable asset.

The MassHealth regulation, 130 Code Mass. Regs. § 520.023(C)(1)(d), accurately interprets § 1396p(d)(3) in providing, "The home or former home of a nursing-facility resident or spouse held in an irrevocable trust that is available according to the terms of the trust is a countable asset."  There is no doubt that, where the terms of the trust grant the trustee the discretion in any circumstance to sell the grantors' home and distribute to them the proceeds, the home is

_____

[12] Under the Massachusetts regulations implementing the Federal Medicaid act, countable income includes income to which an applicant, a person already receiving Medicaid benefits, or a spouse "would be entitled whether or not actually received when failure to receive such income results from [their] action or inaction."  See 130 Code Mass. Regs. § 520.009(A)(4) (2014).  "In determining whether or not failure to receive such income is reasonably considered to result from such action or inaction, the MassHealth agency will consider the specific circumstances involved."  Id.

a countable asset for Medicaid eligibility. Where MassHealth errs is in interpreting its regulation to mean that a home "is available according to the terms of the trust" simply because the terms of the trust give the grantors the right of use and occupancy of the home. Such a right is not a circumstance that would give the trustee the discretion to sell the home and distribute the proceeds to the applicant, and therefore is not a circumstance that may render the home a countable asset.

As the United States Supreme Court has declared, "the principle of actual availability . . . has served primarily to prevent the States from conjuring fictional sources of income and resources by imputing financial support from persons who have no obligation to furnish it or by overvaluing assets in a manner that attributes nonexistent resources to recipients." Heckler v. Turner, 470 U.S. 184, 200 (1985). The "any circumstances" test for trusts requires an additional layer of analysis, but it does not depart from this fundamental purpose. See Guerriero, 433 Mass. at 634 (trust assets not available to applicant where trustee did not have "any legal discretion" to pay any part of trust principal to her). By declaring the equity in a home owned by an irrevocable trust to be actually available to an applicant where the trustee has no power to sell the home and distribute the proceeds to the applicant under any circumstance, Massachusetts is effectively "conjuring [a]

fictional" resource (the applicant's home) by "imputing financial support" from a person who has no authority to furnish it (the trustee).

Because the MassHealth determination that Nadeau was ineligible to receive Medicaid long-term care benefits rests solely on the availability of his home as a resource, we vacate the judgment affirming this finding and remand the matter to MassHealth to evaluate two other possible sources of countable assets.  As earlier discussed, the terms of the Nadeau Trust permit the equity in the Nadeau home to be paid at the Nadeaus' direction or for their benefit during their lifetimes in two circumstances.

First, the Nadeaus may "appoint . . . all or any part of the trust property . . . to any one or more charitable or non-profit organizations" over which they have no controlling interest.  Had Nadeau received care at a nursing home operated by a nonprofit organization, he could have used the assets of the trust, including his home, to pay the nonprofit organization for his care.  Because approximately one-fourth of the nursing homes in Massachusetts are operated by nonprofit organizations,[13] albeit not the nursing home where he received care, it is

---

[13] See MatchNursingHomes.org, Massachusetts Nursing Homes and Resources, http://matchnursinghomes.org/state/ma-nursing-homes [https://perma.cc/G7CS-2G3B] (citing 2011 data).

appropriate for MassHealth to consider whether this possibility fits within the "any circumstances" test.

Second, because the trust is intended to be construed as a "grantors trust" under the Internal Revenue Code, 26 U.S.C. § 677(a), with all income distributed to the grantors taxable to them, the trustee may pay any tax liability arising from such distributions from the corpus of the trust. MassHealth may determine that this portion of the corpus is a countable asset under the "any circumstances" test and may ascertain, under § 1396p(d)(3), the size of the "portion of the corpus from which . . . payment to the individual could be made" in this circumstance.

Our analysis is different for the Daley Trust because, in contrast with the Nadeau Trust, the Daley Trust did not own the home in fee simple; the Daleys retained a life estate and deeded only the remainder interest in their home to the trust. Their continued residence in the home, therefore, cannot be deemed putative income received from the trust through a right of use and occupancy, because the trust has no property interest in the home during the Daleys' lifetime. Instead, the life estate is an asset of the Daleys that can be sold, mortgaged, or leased. See Hershman-Tcherepnin v. Tcherepnin, 452 Mass. 77, 88 n.20 (2008), quoting H.J. Alperin & L.D. Shubow, Summary of Basic Law § 17.5, at 586 (3d ed. 1996) ("[a] life estate is alienable by

the life tenant, and he can accordingly convey his estate to a third person, or mortgage it, or lease it for a term of years"). Moreover, when the underlying property itself is sold, the life tenant has a right to a portion of the sale proceeds, pursuant to an actuarial evaluation of the life estate. See J.A. Bloom & H.S. Margolis, Elder Law § 12:3 (2016). Although we do not decide the question, it appears that MassHealth does not consider a life estate in an applicant's primary residence to be a countable asset for Medicaid eligibility purposes.[14],[15] Where the irrevocable trust does not own the life estate in the

---

[14] In Heyn v. Director of the Office of Medicaid, 89 Mass. App. Ct. 312, 313 n.3 (2016), MassHealth declared in its brief that it is "a correct statement of law" that retention of a life estate in a primary residence does not make an individual ineligible for Medicaid benefits.

[15] We note that 42 U.S.C. § 1396p(b)(4)(B) gives States the option to expand their estate-recovery procedures for Medicaid expenses to include assets beyond those within the individual's probate estate, including "any other real and personal property and other assets in which the individual had any legal title or interest at the time of death . . . , including such assets conveyed to a survivor, heir, or assign of the deceased individual through joint tenancy, tenancy in common, survivorship, life estate, living trust, or other arrangement." Massachusetts has not chosen to expand its estate recovery provisions in this fashion. See G. L. c. 118E, § 31 (c). In States that have exercised this option under § 1396p(b)(4)(B) and increased the scope of estate recovery, the remainder interest in life estates retained by Medicaid beneficiaries are ultimately subject to recovery after the beneficiary's death. See, e.g., Matter of the Estate of Peterson v. Peterson, 157 Idaho 827, 836 (2014) ("When assets of a Medicaid recipient are conveyed to a survivor, heir or assign by the termination of a 'life estate,' the assets remain part of the recipient's 'estate' pursuant to 42 U.S.C. § 1396p[b][4][B] and Idaho Code section 56-218[4][b]").

applicant's primary residence, the continued use of the home by the applicant pursuant to his or her life estate interest does not make the remainder interest in the property owned by the trust available to the applicant.  Therefore, we vacate the judgment affirming the finding that the equity in the Daleys' home is available to them and is accordingly a countable asset for purposes of Medicaid eligibility.  Because the Daley Trust, like the Nadeau Trust, is intended to be construed as a "grantors trust" and the trustee may pay any tax liability arising from income distributions to the grantors from the corpus of the trust, we remand the matter to MassHealth to determine whether this portion of the corpus is a countable asset under the "any circumstances" test and to ascertain under § 1396p(d)(3)(B)(i) the size of the "portion of the corpus from which . . . payment to the individual could be made" in this circumstance.

Conclusion.  We reverse the judgments in both cases, and remand to MassHealth for further proceedings consistent with this opinion.

So ordered.