Sea View Retreat, Inc. (Sea View), appeals from so much of a judgment of the Superior Court as denied its request for reimbursement from the Commonwealth of user fees associated with the operation of its nursing home facility. Sea View contends that (1) the administrative magistrate of the Division of Administrative Law Appeals (DALA) acted in a manner contrary to an express statutory mandate; and (2) Sea View was not required to appeal the user fee assessments to DALA within sixty days, in compliance with G. L. c. 118G, § 25(e ).[2] We affirm.
Background. Sea View is a nursing home facility located in Rowley. Federal law permits States to collect nursing facility user fees as broad-based uniformly imposed health-care-related taxes, which become part of a nursing facility's cost basis for purposes of Medicaid reimbursement. See 42 U.S.C. § 1396b(w)(3)(B) (2000) ; 42 C.F.R. § 433.68 (2008) (discussing permissible health-care-related taxes). In 2002, with the enactment of G. L. c. 118G, § 25,[3] the Legislature authorized the Commonwealth to collect an assessment for every "non-Medicare reimbursed patient day" from nursing facilities in the Commonwealth. Sea View has been assessed quarterly user fees since 2002 for each day of care it provides to patients whose care is not reimbursed by Medicare.
The same Federal law also allows a State to apply for a waiver, which permits the State to exempt certain groups of nursing facilities from paying the user fees. See 42 C.F.R. § 433.68. After obtaining a Federal waiver, the Commonwealth, in 2006, promulgated its own regulations consistent with the Federal scheme.[4]
It is undisputed that, from the time the Commonwealth's regulations were promulgated, Sea View met the criteria necessary for a facility to be deemed exempt from paying user fees. It is also undisputed that despite Sea View meeting these criteria, the Commonwealth did not identify Sea View as a nursing facility eligible for exemption or provide Sea View with an exemption. Between 2006 and July, 2011, Sea View continued to pay the quarterly user fee assessments.[5] While paying the user fees, Sea View collected "add-on" user fee reimbursements from the Commonwealth. "Add-ons" are Medicaid payment enhancements intended to reimburse nursing homes for a portion of the user fee assessments that they are required to pay to the Commonwealth. See now 101 Code Mass. Regs. § 206.06(12) (2018).[6]
On November 1, 2011, the Commonwealth issued Sea View an invoice for payment of the most recent quarter's user fees. Sea View did not make payment. On January 4, 2012, the Commonwealth issued a past-due notice, demanding Sea View pay its unpaid quarterly user fee assessment. On February 2, 2012, Sea View appealed the user fee assessment to DALA.[7] The DALA magistrate concluded that Sea View's challenge to the assessment of fees imposed prior to December 4, 2011, were time-barred for failure to appeal within the sixty-day period set forth in G. L. c. 118G, § 25(e ). In addition, the magistrate concluded that although Sea View met the criteria for exempt status, it did not in fact have an exemption at the time of the action -- due to its placement on the Commonwealth's exemption waiting list.[8]
Sea View then filed a complaint in Superior Court that, as amended, contained a claim for judicial review under G. L. c. 30A, § 14, and a claim for declaratory judgment under G. L. c. 231A, § 2. Sea View was successful with respect to one part of the action: The Commonwealth was required to grant it the user fee exemption. (See note 7, supra.) However, the Superior Court judge agreed with the magistrate that Sea View was limited to pursuing claims for user fees assessed on or after the November 1, 2011, assessment, which was the first one timely appealed to DALA in accordance with G. L. c. 118G, § 25(e ). This appeal followed.
Discussion. a. General Laws c. 30A, § 14. Sea View contends that since it should have received the legislatively mandated exemption at all times, it is entitled to retroactive application of exempt status. "Appellate review under G. L. c. 30A, § 14, is limited to determining whether the agency's decision was unsupported by substantial evidence, arbitrary and capricious, or otherwise based on an error of law." Burke v. Board of Appeal on Motor Vehicle Liab. Policies & Bonds, 90 Mass. App. Ct. 203, 205 (2016) (quotation omitted). "As the party challenging an agency decision under G. L. c. 30A, § 14, [Sea View] has the burden of proof to demonstrate the invalidity of the administrative determination." Id. at 206.
General Laws c. 118G, § 25(e ), states that an aggrieved nursing facility challenging a user fee assessment "may file an appeal to the division of administrative law appeals within 60 days of the date of the notice of underpayment or the date the notice was received, whichever is later." In this case, Sea View did not appeal any assessments for years. Instead, Sea View made quarterly user fee payments -- while collecting "add on" reimbursements -- between 2006 and 2011, before first filing an appeal on February 2, 2012.
Nonetheless, Sea View maintains that the Commonwealth ignored its requests to be reclassified as exempt, and that the DALA magistrate erred in declining to find that the Commonwealth had received faxed letters Sea View sent in prior years requesting exempt status. The DALA magistrate was not required to make the requested finding. The legitimacy of Sea View's reclassification requests -- alleged to have been sent as early as 2009 -- are not material, as Sea View did not file a timely appeal in accordance with § 25(e ).
b. General Laws c. 231A, § 2. Sea View contends it may nonetheless bring an action for declaratory relief under G. L. c. 231A, § 2, and obtain retroactive relief in that manner. Sea View may not use a declaratory judgment action to circumvent the applicable administrative appeal period, however. See New England Milk Dealers Assn., Inc. v. Department of Food & Agric., 22 Mass. App. Ct. 705, 709 (1986) (Milk Dealers ). "[I]n the absence of special circumstances, usually ones involving a question of broad and acute public interest, declaratory relief should not be used to circumvent a period prescribed by statute for obtaining judicial review."Ibid. The declaratory judgment action also must be filed within the sixty-day time frame allotted in § 25(e ). See Milk Dealers, supra at 706.
c. Futility. Sea View claims that it was not required to "exhaust administrative remedies" by complying with § 25(e ), because it would have been futile or inadequate. "To obtain declaratory relief in a case involving administrative action, a plaintiff must show [among other things] ... [that] available administrative remedies have been exhausted." New Bedford Educators Assn. v. Chairman of Mass. Bd. of Elementary & Secondary Educ., 92 Mass. App. Ct. 99, 107 (2017) (quotation omitted). "The doctrine of exhaustion of administrative remedies is one of deference to the Legislature where it has expressed its intent that a particular question be determined in the first instance by an administrative agency. Exceptions are rare." Athol Memorial Hosp. v. Commissioner of Div. of Med. Assistance, 437 Mass. 417, 426 (2002). Under one such exception, "where ... the administrative remedies would be inadequate, or resort to them futile, courts can exercise jurisdiction despite the plaintiff's failure to pursue such remedies." Ciszewski v. Industrial Acc. Bd., 367 Mass. 135, 141 (1975). "[T]his exception applies only where the power and authority of the agency themselves are in question, and not where the exercise of that agency's discretion is challenged." Ibid.
The futility exception does not apply in these circumstances. As discussed below, the proper course of action for Sea View was filing an appeal to DALA within the sixty-day time frame provided in § 25(e ). If Sea View had done so and the DALA magistrate "applied the law incorrectly to the facts [he] found, such an error could be rectified in a complaint for judicial review under G. L. c. 30A, § 14." Athol Memorial Hosp., supra. "Since 'a direct and distinct path of review' [was] available, declaratory relief is not." Rosenfeld v. Board of Health of Chilmark, 27 Mass. App. Ct. 621, 626 (1989), quoting from Milk Dealers, supra.
Moreover, G. L. c. 118G, § 25(b ), enacted to fund Medicaid payments, provides that "[e]ach nursing home shall pay an assessment ... sufficient in the aggregate to generate $145 million in each fiscal year." Allowing noncompliance with the sixty-day appeal period provided in § 25(e ) and permitting parties to seek declaratory judgments to recoup funds from long-past assessment periods would frustrate the Legislature's purpose of ensuring that Medicaid payments were funded for "each fiscal year."[9]
Finally, Sea View contends that the Commonwealth is not entitled to a windfall of user fee payments when it was never authorized to assess them. The Commonwealth has not received a windfall. Sea View could have appealed the erroneous user fee assessments for any quarterly period between 2006 and 2011, but failed to do so.
Judgment affirmed.

In late 2012, the Legislature repealed G. L. c. 118G, § 25, and placed the same language in the newly created G. L. c. 118E, § 63(e ). See St. 2012, c. 224, §§ 131, 132.

See St. 2002, c. 184, § 101.

See generally 114.5 Code Mass. Regs. §§ 12.00 (2006).

Sea View last paid any assessed user fees in July, 2011.

Additionally, according to the Commonwealth, between Sea View's cessation of user fee payments in 2011 and the first quarter of 2016, Sea View received some $1.2 million in "add-on" payments.

In its appeal to DALA, Sea View contended that it was exempt from user fee payments assessed and collected by the Commonwealth and that it had sent the Commonwealth numerous reclassification requests, which had been ignored. Sea View requested that DALA declare it exempt from having to pay user fee assessments issued after September 1, 2009, and that it order the Commonwealth to refrain from taking any action against it for the failure to pay future user fee assessments.

One of the issues decided by the Superior Court judge was that the Commonwealth did not have the authority to create a waiting list for nursing facilities that qualify for exempt status. As the Commonwealth did not appeal, the merits of that ruling are not before us.

Also relevant is the necessity that the Commonwealth's program remain in compliance with the Federal regulations to maintain Federal funding. See Daley v. Secretary of Exec. Office of Health & Human Servs., 477 Mass. 188, 190 (2017) ; Needham v. Director of Office of Medicaid, 88 Mass. App. Ct. 558, 561 (2015). This is especially relevant since the Commonwealth is required to finance a significant portion of Medicaid benefits on its own. See Daley, supra.