EXECUTIVE OFFICE OF HEALTH AND HUMAN SERVICES vs. TROCKI, 100 Mass. App. Ct. 117

 
 EXECUTIVE OFFICE OF HEALTH AND HUMAN SERVICES vs. CYNTHIA TROCKI, personal representative. [Note 1]

100 Mass. App. Ct. 117
 April 6, 2021 - August 5, 2021

Court Below: Superior Court, Suffolk County
Present: Rubin, Kinder, & Desmond, JJ.

 

MassHealth. Medicaid. Executor and Administrator, Claims against estate. Insurance, Notice. Notice. Practice, Civil, Summary judgment.

In a civil action brought against the decedent's estate seeking recovery of $180,000 in monthly capitation payments that MassHealth, Massachusetts's Medicaid program administered by the plaintiff, had paid on the decedent's behalf for his membership in a senior care organization, the Superior Court judge erred in awarding summary judgment in favor of the plaintiff on its estate recovery claim, where MassHealth failed to provide the decedent with separate notice in advance of his enrollment in the organization that there could be a claim against his estate for such capitation payments. [120-125]

CIVIL ACTION commenced in the Superior Court Department on October 4, 2018. 

 The case was heard by Anthony M. Campo, J., on a motion for summary judgment, and a motion for reconsideration was considered by him.

 Charles E. Vander Linden for the defendant.

 Victoria Pulos for Massachusetts Law Reform Institute &

others.

 Phoebe Fischer-Groban, Assistant Attorney General, for the

plaintiff.

 RUBIN, J. Stephen Pekala was enrolled in a senior care organization (SCO) run by Fallon Community Health Plan (Fallon) open to those eligible for both Medicare and MassHealth. [Note 2] Between his enrollment and his death, MassHealth made monthly "capitation

 Page 118 

 payments" to Fallon for his membership in this SCO program. Capitation payments are similar to insurance premium payments in that they involve monthly payments of a set amount to cover a specified set of services and administrative costs without regard to the actual number of services provided. See G. L. c. 118E, § 9D (a) (definition of capitation). Following Pekala's death, the Executive Office of Health and Human Services (EOHHS) brought this action against his estate seeking to recover almost $180,000 in monthly capitation payments that MassHealth had paid on the decedent's behalf from May 2013 to the decedent's death in March 2018. 

 We conclude that consistent with the revisions to the State Medicaid Manual (Manual) published by the Federal Health Care Financing Administration (HCFA) [Note 3] in 2001, in order for EOHHS to recover capitation payments from an estate, it must provide separate notice in advance of enrollment that the payments made will be recovered against the estate. See State Medicaid Manual, Health Care Financing Administration Pub. No. 45-3, Transmittal 75 § 3810.A.6 (Jan. 11, 2001). [Note 4] MassHealth failed to provide such separate notice. Therefore, we conclude that the Superior Court judge erred in awarding EOHHS summary judgment on its estate recovery claim. We reverse. [Note 5] 

 Background. In an appeal from the allowance of a motion for summary judgment, we must view the evidence in the light most favorable to the nonmoving party, here the defendant, Trocki. See Pinti v. Emigrant Mtge. Co., 472 Mass. 226, 231 (2015). The evidence in the summary judgment record viewed in that light shows the following: In December 2012, Stephen Pekala, at the time seventy-seven years old and Medicare eligible, enrolled in the Fallon Senior Plan HMO, a Medicare Advantage plan offered by Fallon. Shortly after enrolling, he received a letter from Fallon informing him that he could obtain additional assistance covering his Medicare copays, deductibles, and prescription drug coverage by joining Navicare, an SCO program run by Fallon. After reviewing the letter, Pekala's daughter, Cynthia Trocki, had a telephone 

 Page 119 

conversation with Fallon's Medicaid coordinator, who explained that in order to join Navicare, Pekala needed to first enroll in MassHealth. Trocki explained that Pekala did not want to participate in any program that would lead to a claim against his estate, and the Medicaid coordinator assured Trocki that participating in the Navicare program would not give rise to such claims. 

 After this conversation, Trocki assisted Pekala in completing and submitting the MassHealth application. Pekala was protective of his estate and made it clear to Trocki that he wanted to protect his house, valued at about $136,000, so that it could pass without encumbrances or liens under the terms of his will. As a result of these concerns, Trocki made modifications to the language in the application in several places according to Pekala's instructions. On page ten of the application, Trocki crossed out the paragraph that said, "I understand that in some cases, MassHealth may place a lien against any real estate that I have a legal interest in. If MassHealth puts a lien against my property and I sell it, I may need to use money I get from the sale of that property to repay MassHealth for medical services that I get." Additionally, on the same page, it said, "I understand that if I am aged 55 or older, or I am any age and MassHealth helps pay for my care in a nursing home, MassHealth may be able to get back money from my estate after I die." Trocki underlined "nursing home" and wrote in the margin, "Just nursing home exp". The application further said, "I certify that I have read or have had read to me the information on this application, including any supplements and instruction pages attached to it, and the information in the MassHealth and You guide, and that I understand my rights and responsibilities." Trocki underlined "MassHealth and You guide," indicated in the margin, "I have not read," and crossed out the phrase "that I understand my rights and responsibilities."

 Pekala was found eligible for MassHealth and was enrolled in Navicare. Pekala received no indication from Navicare, Fallon, or the Commonwealth that the modifications he made to the application form were not acceptable. In 2017, he received a MassHealth Eligibility Review form, which contained the same language about estate recovery and the MassHealth and You guide as the MassHealth application, and he completed, signed, and submitted the form without modification. 

 From May 2013 to February 2018, MassHealth made monthly capitation payments of about $3,000 per month to Fallon for Pekala's participation in Navicare regardless of whether Pekala

 Page 120 

 used any services or how much they actually cost. Pekala never received any notice that MassHealth was paying a monthly capitation payment to Fallon, much less the amount of that monthly payment. He was never notified that his estate would be responsible for repaying the entire cost of his participation in Navicare. By the time Pekala passed away, MassHealth had paid $179,371.32 in capitation payments. [Note 6]

 Pekala died on March 23, 2018, at the age of eighty-two, and Trocki was appointed as the personal representative of his estate on August 21, 2018. EOHHS filed a notice of claim on August 28, 2018, in the Probate Court seeking reimbursement for $179,380.34 pursuant to G. L. c. 118E, § 31 (b), which provides that for individuals dying on or after April 1, 1995, "There shall be no adjustments or recovery of medical assistance correctly paid except . . . [f]rom the estate of an individual who was fifty-five years of age or older when he or she received such assistance" and where such assistance was provided on or after October 1, 1993. Due to Pekala's limited assets, satisfaction of this claim would require Trocki to sell Pekala's house. Trocki responded with a letter denying MassHealth's claim. 

 On October 4, 2018, EOHHS filed a complaint in Superior Court against Trocki, as personal representative of Pekala's estate, seeking an order directing Trocki to use Pekala's estate assets to satisfy MassHealth's claim. EOHHS moved for summary judgment on March 21, 2019, which Trocki opposed. On May 14, 2019, the judge allowed EOHHS's motion for summary judgment and ordered that judgment enter against the defendant. Trocki's motion for reconsideration was denied, and she filed a timely notice of appeal.

 Discussion. In an appeal from the allowance of a motion for summary judgment, our review is de novo, and we must determine whether "all material facts have been established and the moving party is entitled to a judgment as a matter of law." Pinti, 472 Mass. at 231, quoting Juliano v. Simpson, 461 Mass. 527, 529-530 (2012). 

 Medicaid is a joint State and Federal program that provides "medical assistance to individuals who cannot afford to pay for their own medical costs." Daley v. Secretary of the Executive Office of Health & Human Servs., 477 Mass. 188, 189 (2017). 

 Page 121 

 State participation in Medicaid is voluntary, but participating States must comply with Federal law and regulations. Id. at 190. Massachusetts's Medicaid program is known as MassHealth, and it is administered by EOHHS. See G. L. c. 118E, § 9. 

 Under Federal law, State Medicaid programs must have an estate recovery program that recovers costs paid to certain Medicaid recipients. 42 U.S.C. § 1396p(b). States must recover from the estates of individuals costs paid by Medicaid for "nursing facility services, home and community-based services, and related hospital and prescription drug services" if the recipients were age fifty-five or older when they received these services as Medicaid benefits. No such costs are at issue here. At the State's option, the State may recover "any items or services under the State plan" except for Medicare cost-sharing. § 1396p(b)(1)(B). Massachusetts has elected to recover for all "medical assistance" in its State plan. See G. L. c. 118E, § 31 (b) ("There shall be no adjustments or recovery of medical assistance correctly paid except . . . [f]rom the estate of an individual who was fifty-five years of age or older when he or she received such assistance . . ."). EEOHS asserts that capitation payments amount to "medical assistance" within the meaning of the statute. It thus claims that, although Federal law does not require it, it is entitled to reimbursement for the capitation payments, regardless of whether any medical care or services were provided to Pekala. Trocki, on the other hand, argues that since "medical assistance" is defined in Massachusetts law as payment "of all or part of the cost of the medical care and services provided to recipients," G. L. c. 118E, § 8 (d), and since capitations are paid "without regard to the actual number of services provided," G. L. c. 118E, § 9D (a), MassHealth cannot recover the full capitation payment because it would be more than the actual cost of medical care and services provided.

 We need not, however, resolve this question because we conclude that MassHealth failed to provide Pekala with adequate notice that there could be a claim against his estate for capitation payments made by MassHealth.

 The State Medicaid Manual, which (as discussed, supra) is published by the Health Care Financing Administration, the agency "charged with administering the Medicaid program and promulgating its implementing regulations," Normand v. Director of the Office of Medicaid, 77 Mass. App. Ct. 634, 637 n.9 (2010), quoting Rudow v. Commissioner of the Div. of Med. 

 Page 122 

Assistance, 429 Mass. 218, 227 n.14 (1999), provides with respect to notice:

"Estate Recovery and Managed Care. -- When a Medicaid beneficiary, permanently institutionalized, or age 55 or older, is enrolled (either voluntarily or mandatorily) in a managed care organization and services are provided by the managed care organization that are included under the State's plan for estate recovery, you [i.e., the State Medicaid agency, here MassHealth] must seek adjustment or recovery from the individual's estate for the premium payments in your claim against the estate. When the beneficiary enrolls in the managed care organization, you must provide a separate notice to the beneficiary that explains that the premium payments made to the managed care organization are included either in whole or in part in the claim against the estate" (emphasis added).

State Medicaid Manual, Health Care Financing Administration Pub. No. 45-3, Transmittal 75 § 3810.A.6 (Jan. 11, 2001). Although the Manual does not carry the force of regulations, it "provides instruction to State officials in applying the provisions of Federal Medicaid law," and "we consider such guidance carefully for its persuasive power." Daley, 477 Mass. at 200. 

 EOHHS does not dispute that it failed to adhere to the provision requiring separate notice regarding managed care premium payments, quoted above, but argues that the guidance in the Manual is not correct. We disagree. Massachusetts courts have followed interpretations of Federal law made by HCFA contained in the Manual in numerous cases. See, e.g., Daley, 477 Mass. at 199-201; Atlanticare Med. Ctr. v. Commissioner of the Div. of Med. Assistance, 439 Mass. 1, 9-10 (2003); Gauthier v. Director of the Office of Medicaid, 80 Mass. App. Ct. 777, 785 & n.5 (2011). Federal courts have likewise recognized that the Manual is "entitled to respectful consideration in light of the agency's significant expertise, the technical complexity of the Medicaid program, and the exceptionally broad authority conferred upon the Secretary under the Act." S.D. v. Hood, 391 F.3d 581, 590 n.6 (5th Cir. 2004). See Wong v. Doar, 571 F.3d 247, 260 (2d Cir. 2009) (State Medicaid Manual is "precisely the kind of informal interpretation that warrants some significant measure of deference" [quotation and citation omitted]). 

 The relevant portion of the Federal estate recovery statute states, "In the case of an individual who was 55 years of age or

 Page 123 

 older when the individual received . . . medical assistance [correctly paid on behalf of an individual under the State plan], the State shall seek adjustment or recovery from the individual's estate, but only for medical assistance consisting of -- . . . at the option of the State, any items or services under the State plan (but not including medical assistance for [M]edicare cost-sharing or for benefits described in section . . . [42 U.S.C. § 1396a(a)(10)(E)])." 42 U.S.C. § 1396p(b)(1)(B)(ii). It is the Manual itself that construes this Federal law to allow recovery of capitation payments from an estate of a Medicaid recipient: Manual § 3810.A was expanded in the January 2001 revision to interpret the scope of the term "medical assistance" in the Federal statute, see 42 U.S.C. § 1396d(a), to include capitation payments to managed care organizations. State Medicaid Manual, Health Care Financing Administration Pub. No. 45-3, Transmittal 75 § 3810.A.6 (Jan. 11, 2001). In such circumstances, we think HCFA's concomitant construction of the statute, contained in that same revision, to require State Medicaid agencies seeking such reimbursement to "provide a separate notice to the beneficiary" before they can "seek adjustment or recovery from the individual's estate for the [capitation] payments," id., is due deference, and we adopt it.

 The fact that the HCFA concluded it was necessary in the first instance to specify that "medical assistance" includes capitation payments indicates what is true, that such an interpretation is not obvious, even to the specialized State agencies implementing Medicaid, let alone to the average Medicaid recipient. It is certainly reasonable to require State Medicaid agencies to provide separate notice about estate recovery for capitation payments where such notice can allow Medicaid recipients to make an informed choice about healthcare options and prevent recipients from losing significant amounts of property and assets in their estates due to confusion or mistaken beliefs. The Medicaid statute provides, "A State plan for medical assistance must . . . provide such safeguards as may be necessary to assure that . . . care and services under the [State] plan will be . . . provided, in a manner consistent with simplicity of administration and the best interests of the recipients." 42 U.S.C. § 1396a(a)(19). Notice that the State may seek recovery of these payments even if no services are rendered, is an appropriate safeguard to protect the best interests of Medicaid recipients, which include their interest in the financial consequences of receiving Medicaid, both to themselves and to their estates, as well as their interest in their health.

 Page 124 

 Even if MassHealth provides a general notice to MassHealth recipients about estate recovery, as it did here, there is good reason to require that MassHealth provide separate notice that capitated payments made to SCOs will be recovered from the Medicaid recipient's estate. Unlike a traditional fee for service arrangement, MassHealth makes capitation payments without regard to the actual services provided the enrollee, and this key difference may cause confusion for Medicaid recipients. Individuals may not fully understand the difference between fee for service and capitation, or the implications of that difference on their estate unless it is carefully explained. Additionally, individuals enrolled in SCOs may not even be aware that MassHealth is making monthly capitation payments on their behalf since they are not responsible for these payments and thus may not receive invoices or other documentation putting them on notice of such payments. Thus, even if these individuals are aware of estate recovery generally, their lack of knowledge about capitation payments may cause them to mistakenly believe that the claims against their estates are minimal because they used few services, when in fact, the claim may be significant because they were members of the SCO for many years. 

 Nor is requiring a one-time separate notice only for those who enroll in managed care organizations an unreasonable burden to place on State agencies that decide to seek reimbursement for such payments -- indeed, Massachusetts law already requires MassHealth to "educate consumers and their families as to their enrollment choices under MassHealth senior care options and other available alternatives under Medicare and Medicaid." G. L. 118E, § 9D (e) (3).

 MassHealth's failure to comply with the notice provision bars MassHealth's claim against Pekala's estate for capitation payments. See Estate of Schiola v. Colorado Dep't of Health Care Policy & Fin., 51 P.3d 1080, 1083 (Colo. Ct. App. 2002) (holding that probate court did not err by dismissing Colorado Medicaid agency's claim against estate where agency had provided defective notice of right to apply for hardship waiver as required by Manual). See also Vargas v. Trainor, 508 F.2d 485, 490 (7th Cir. 1974), cert. denied, 420 U.S. 1008 (1975) (notice given to public assistance recipients that did not explain why benefits were reduced or terminated was deficient, and plaintiffs were entitled to full amount of public assistance until State provided proper notice). And since payment in full of those capitation payments is the only

 Page 125 

 relief EOHHS sought below, never raising an alternative argument that it was entitled to some lesser amount, the allowance of its motion for summary judgment must be reversed. [Note 7] 

Judgment reversed. [Note 8]

FOOTNOTES
[Note 1] Of the estate of Stephen Pekala. 

[Note 2] An SCO is a type of managed care organization available to individuals eligible for both Medicare and MassHealth that provides "a comprehensive network of medical, health care and social service providers that integrates all components of care, either directly or through subcontracts," and which "will be responsible for providing enrollees with the full continuum of Medicare and MassHealth covered services." G. L. c. 118E, § 9D. 

[Note 3] Now the Centers for Medicare and Medicaid Services. See Daley v. Secretary of the Executive Office of Health & Human Servs., 477 Mass. 188, 190 n.4 (2017). 

[Note 4] Available at https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/r75sm3.pdf [https://perma.cc/S5LT-54P9]. 

[Note 5] We acknowledge the amicus brief submitted by the Massachusetts Law Reform Institute, the Massachusetts Chapter of the National Academy of Elder Law Attorneys, the Massachusetts Senior Action Council, and Justice in Aging in support of the appellant, Trocki. 

[Note 6] In addition to the $179,371.32 in capitation payments, the Commonwealth also seeks to recover a $9.02 "billing report fee," making the total claim against Pekala's estate $179,380.34. 

[Note 7] We need not reach Trocki's argument that MassHealth is not entitled to recover the full amount of the capitation payments under Federal law. Trocki argues that since MassHealth is prohibited by Federal law from recovering any Medicaid payments of Medicare cost-sharing, 42 U.S.C. § 1396p(b)(1)(B)(ii), MassHealth is not entitled to recover the full amount of the capitation payment from the estate because it has failed to show that the capitation payments were not used to pay for Medicare cost-sharing. 

[Note 8] Trocki did not herself move for summary judgment and, before us, she asks only for reversal of the order allowing summary judgment. Under Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002), "[s]ummary judgment, when appropriate, may be rendered against the moving party." Whether any material facts remain in dispute and Trocki is entitled to judgment as a matter of law, may be explored in the first instance in the trial court. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.