NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13439

IN THE MATTER OF THE ESTATE OF FRANCES R. MASON.


Barnstable.      September 13, 2023. - December 13, 2023.

Present:  Budd, C.J., Gaziano, Lowy, Cypher, Kafker, Wendlandt,
& Georges, JJ.


Medicaid.  MassHealth.  Lien.  Executor and Administrator,
    Claims against estate.  Uniform Probate Code.  Repose,
    Statute of.  Statute, Construction, Retroactive
    application.



    Petition filed in the Barnstable Division of the Probate
and Family Court Department on June 7, 2017.

    A motion to strike was heard by Angela M. Ordonez, J.

    The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


    Christine Fimognari, Assistant Attorney General, for
Executive Office of Health and Human Services.
    Matthew J. Dupuy for the petitioner.
    Patricia Keane Martin, Clarence D. Richardson, Jr., & C.
Alex Hahn, for the Massachusetts Chapter of the National Academy
of Elder Law Attorneys, amicus curiae, submitted a brief.
    Brian E. Barreira, pro se, amicus curiae, submitted a
brief.

WENDLANDT, J.  Through a cooperative Federal and State regulatory scheme, eligible Massachusetts residents (members) may have their medical costs covered by the State-administered health insurance program for low-income residents (MassHealth), which is overseen by the Executive Office of Health and Human Services (EOHHS).[1]  Under this regulatory scheme, MassHealth is prohibited from recovering Medicaid benefits it has paid except in the case of certain categories of members.  And even with regard to these members, MassHealth generally is prohibited from commencing recoupment efforts before a member's death and must seek recovery only from the member's probate estate.

In limited circumstances, however, Federal and State statutes permit MassHealth to act during the member's lifetime. Relevant here, 42 U.S.C. § 1396p and G. L. c. 118E, § 34, permit MassHealth to impose a lien prior to a member's death (TEFRA lien[2]) against the member's property if the member is permanently institutionalized, having been admitted to a medical facility from which she is not reasonably expected to return home.  If, while living in the facility, the member sells the property against which MassHealth has imposed a TEFRA lien, MassHealth

---

[1] The parties refer to the State Medicaid program and EOHHS as "MassHealth."  For consistency, we do the same.

[2] We refer to these liens by the name of the Federal act that permits them, the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, 96 Stat. 324 (1982).

may seek to recover Medicaid benefits paid, so long as protections for certain of the member's relatives are not applicable.  See G. L. c. 118E, § 31 (d).  In other words, in this limited circumstance, MassHealth need not wait until the member's death to recoup Medicaid benefits paid.

This case presents the question whether, in Massachusetts, the Legislature has limited the State's implementation of the TEFRA lien program to allow enforcement of a TEFRA lien only if the encumbered property is sold during the member's lifetime. We conclude that it has.

Separate from MassHealth's authority to enforce a TEFRA lien during a member's lifetime, MassHealth may assert a timely claim against a member's probate estate to seek to recover Medicaid expenses after the member's death.  The timing of such a claim presents the second question we must address in this case:  whether the three-year statute of repose of the Massachusetts Uniform Probate Code (MUPC), G. L. c. 190B, § 3-108, applies retroactively to bar MassHealth's claim to recoup Medicaid benefits paid for the medical care of a member who died prior to the effective date of the MUPC.  We conclude that it does not.

Applying these conclusions in the present matter, we affirm the order of the Probate and Family Court judge insofar as it struck MassHealth's lien against the home of the decedent,

Frances R. Mason, who was permanently institutionalized in a medical facility in the last months of her life, and we reverse the order insofar as it dismissed MassHealth's claim against her estate.[3]

1. Factual background. The relevant facts are undisputed. From January to August 2008, MassHealth provided Medicaid funds to cover Mason's care in a residential nursing facility. On May 2, 2008, MassHealth, having determined that Mason would be institutionalized permanently, recorded a TEFRA lien against Mason's home in South Yarmouth (property). As expected, Mason lived her remaining days in the facility, and on August 18, 2008, Mason died testate,[4] at the age of eighty-eight. The property was not sold during Mason's lifetime while it was subject to the TEFRA lien.

2. Procedural history. In June 2017, nearly nine years after Mason's death, Maryann Fells (petitioner), the named executor of Mason's will, filed a petition in the Probate and Family Court to open formal probate proceedings to settle Mason's estate.[5] A personal representative was appointed, and

---

[3] We acknowledge the briefs of amici curiae Massachusetts Chapter of the National Academy of Elder Law Attorneys and Brian E. Barreira.

[4] Mason executed a will in 2005.

[5] See G. L. c. 190B, § 3-401 ("A formal testacy proceeding may be commenced by an interested person filing a petition as

the personal representative's bond was approved on July 20, 2018.

The petition and Mason's death certificate were sent to MassHealth.[6]  On August 13, 2018, MassHealth filed a notice of claim to recover the Medicaid benefits paid for Mason's care.[7] On September 27, 2021, the property was sold, and the proceeds of the sale were held in escrow.

The personal representative did not object to MassHealth's claim;[8] however, the petitioner filed a motion to strike both MassHealth's lien against the property and MassHealth's claim against Mason's estate.[9]  On March 4, 2022, the judge allowed the

---

described in [§] 3-402 [a] in which that person requests that the court enter an order probating a will . . .").

[6] See G. L. c. 118E, § 32 (a) ("a petition for admission to probate of a decedent's will or for administration of a decedent's estate shall include a sworn statement that copies of said petition and death certificate have been sent to" MassHealth).

[7] See G. L. c. 118E, § 32 (b) (permitting MassHealth to "present claims against a decedent's estate . . . within four months after approval of the official bond of the personal representative").

[8] See G. L. c. 118E, § 32 (d) (personal representative must respond to MassHealth's claim within sixty days).

[9] On appeal, the petitioner asserts that she, along with Nicole Fells, filed the motion; however, the record indicates only that Nicole, to whom a Probate and Family Court judge referred as a "party-in-interest" in Mason's estate, was named in the filing.  MassHealth does not raise any issues with the designation of the petitioner as the appellee, and nothing in our opinion turns on the distinction.

motion. She concluded that the TEFRA lien against the property became invalid upon Mason's death because the property had not been sold "during her lifetime," which the judge determined was required to trigger MassHealth's right to enforce the lien. In addition, the judge ruled that, although Mason died before the effective date of the MUPC, MassHealth's claim against Mason's estate was barred by the MUPC's three-year statute of repose, G. L. c. 190B, § 3-108 (4). MassHealth timely appealed. We transferred the case to this court on our own motion.

3. Discussion. This case presents two questions of statutory construction, which we review de novo. Conservation Comm'n of Norton v. Pesa, 488 Mass. 325, 331 (2021).[10] First, we address whether a TEFRA lien that has been imposed against a permanently institutionalized member's home is enforceable after the member's death. Second, we consider whether the MUPC's three-year statute of repose applies to MassHealth's claim for recovery of Medicaid benefits paid on behalf of a member who died prior to the MUPC's effective date.

---

[10] A final decree in this matter has not been entered in the Probate and Family Court; nonetheless, this appeal properly is before us. See, e.g., Marcus v. Pearce Woolen Mills, Inc., 353 Mass. 483, 484-485 (1968) (creditor's appeal of order to vacate creditor's appearance in opposition to allowance of will immediately appealable despite lack of finality in settlement of estate).

In construing a statute, we begin with its plain language. Metcalf v. BSC Group, Inc., 492 Mass. 676, 681 (2023).

> "[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated" (citation omitted).

Harvard Crimson, Inc. v. President & Fellows of Harvard College, 445 Mass. 745, 749 (2006).  "Ordinarily, where the language of a statute is plain and unambiguous, it is conclusive as to legislative intent."  Sharris v. Commonwealth, 480 Mass. 586, 594 (2018), quoting Thurdin v. SEI Boston, LLC, 452 Mass. 436, 444 (2008).  "Where the statutory language is not conclusive, we may 'turn to extrinsic sources, including the legislative history and other statutes, for assistance in our interpretation.'"  HSBC Bank USA, N.A. v. Morris, 490 Mass. 322, 332-333 (2022), quoting Chandler v. County Comm'rs of Nantucket County, 437 Mass. 430, 435 (2002).  We "look to the statutory scheme as a whole . . . so as to produce an internal consistency within the statute" (quotations and citations omitted).  Plymouth Retirement Bd. v. Contributory Retirement Appeal Bd., 483 Mass. 600, 605 (2019).

We construe "[a] properly promulgated regulation . . . in the same manner as a statute."  Harvard Crimson, Inc., 445 Mass. at 749.  Where an agency construes a statute, "[w]e give

deference to agency interpretations in areas where the Legislature has delegated decision-making authority to the agency when the 'interpretation is not contrary to the plain language of the statutes or their underlying purposes.'" Metcalf, 492 Mass. at 681, quoting Mullally v. Waste Mgt. of Mass., Inc., 452 Mass. 526, 533 (2008). However, deference is "not abdication, and this court will not hesitate to overrule agency interpretations of statutes or rules when those interpretations are arbitrary or unreasonable." Armstrong v. Secretary of Energy & Envtl. Affairs, 490 Mass. 243, 247 (2022), quoting Moot v. Department of Envtl. Protection, 448 Mass. 340, 346 (2007), S.C., 456 Mass. 309 (2010).

a. Enforcement of a TEFRA lien after the member's death. With these principles in mind, we turn to the first question on appeal: whether, having placed a TEFRA lien against the property of a member who is permanently institutionalized, MassHealth may enforce the TEFRA lien after the member's death. Because TEFRA liens are creatures of Federal and State statutes, our analysis begins with a review of these statutes. See, e.g., City Elec. Supply Co. v. Arch Ins. Co., 481 Mass. 784 (2019) (analyzing statute governing mechanic's liens to resolve dispute involving mechanic's lien); Drummer Boy Homes Ass'n v. Britton, 474 Mass. 17 (2016) (analyzing statute governing condominium liens to resolve dispute involving condominium

lien); Ropes & Gray LLP v. Jalbert, 454 Mass. 407 (2009) (analyzing statute governing attorney's liens to resolve dispute involving attorney's lien); Luchini v. Commissioner of Revenue, 436 Mass. 403 (2002) (analyzing statute governing tax lien to resolve dispute involving tax lien).

i. Statutory framework. The Federal Medicaid Act[11] "created a cooperative State and Federal program to provide medical assistance to individuals who cannot afford to pay for their own medical costs." Daley v. Secretary of the Executive Office of Health & Human Servs., 477 Mass. 188, 189 (2017). The act, and regulations promogulated under it by the United States Department of Health and Human Services (HHS), set parameters that States participating in Medicaid must follow. See Dermody v. Executive Office of Health & Human Servs., 491 Mass. 223, 225 (2023), petition for cert. filed, U.S. Supreme Ct., No. 22-957 (Mar. 31, 2023). Within these parameters, Federal law gives States flexibility to design and operate their individual State plans. See Matter of the Estate of Kendall, 486 Mass. 522, 533 (2020) (Kendall).

---

[11] The Medicaid Act was enacted as Title XIX of the Social Security Act of 1965 and codified at 42 U.S.C. §§ 1396 et seq.

The Massachusetts Medicaid statutes, G. L. c. 118E,[12] expressly require MassHealth to operate "pursuant to and in conformity with the provisions of [the Medicaid Act]."  G. L. c. 118E, § 9.  See Daley, 477 Mass. at 199, quoting Cruz v. Commissioner of Pub. Welfare, 395 Mass. 107, 112 (1985) ("When there is a conflict between State and Federal regulations, the Legislature intended that [MassHealth] comply with the Federal rule"); Haley v. Commissioner of Pub. Welfare, 394 Mass. 466, 472 (1985) (Legislature "intended the [State Medicaid] benefits program to comply with the Federal statutory and regulatory scheme").

To be eligible for Medicaid benefits, applicants generally must show that their income and assets fall below a defined level, thereby reserving the program's resources for those in most need.  See G. L. c. 118E, § 9A (2) (d); 130 Code Mass. Regs. § 520.003(A) (2019) (MassHealth eligibility requires that "[t]he total value of countable assets owned by or available to" applicant may not exceed defined threshold).  See also 42 U.S.C. § 1396a(a)(10) (prescribing eligibility rules for State plans).  Applicants are expected to "deplete their own resources" before MassHealth will pay their medical expenses.  Lebow v.

---

[12] Massachusetts's Medicaid plan first was enacted in 1969, see St. 1969, c. 800, and was restructured in 1993, see St. 1993, c. 161.

Commissioner of the Div. of Med. Assistance, 433 Mass. 171, 172 (2001). But pertinent to the present matter, an applicant's ownership interest in his or her primary residence is not included in the eligibility calculus unless the equity interest exceeds a threshold amount. See 130 Code Mass. Regs. § 520.008(A) (2013). See also Office of Assistant Secretary for Policy and Evaluation, United States Department of Health and Human Services, Medicaid Treatment of the Home: Determining Eligibility and Repayment for Long-Term Care, at 1-2 (Apr. 2005).

ii. Imposition of TEFRA liens. Because an individual's ownership interest in his or her home generally is not counted for purposes of determining eligibility for Medicaid coverage, "[i]t is . . . possible . . . for an elderly individual who anticipates needing nursing home care to give his[ or ]her home to a family member or friend without fear of losing or being denied [M]edicaid eligibility . . . assur[ing] that the home will not be . . . subject to any recovery action." S. Rep. No. 97-494, at 38 (1982). In part to address this potential avenue to thwart a State plan's efforts to recover Medicaid benefits paid, Congress passed the Tax Equity and Fiscal Responsibility of Act of 1982 (TEFRA), codified in relevant part at 42 U.S.C. § 1396p(a)(1)(B).

Specifically, TEFRA authorizes a State Medicaid agency to place a lien[13] against the real property of a permanently institutionalized member, defined as an eligible individual (1) who is an inpatient of a medical institution; and (2) whom the State Medicaid agency has determined, after notice and an opportunity for hearing in accordance with the State's established administrative procedures, "cannot reasonably be expected to be discharged from the medical institution and to return home."[14]  42 U.S.C. § 1396p(a)(1).  See 42 C.F.R. § 433.36(g)(2).  If, contrary to expectations, the permanently institutionalized member is discharged from the medical institution and returns home, a TEFRA lien "shall dissolve."  42 U.S.C. § 1396p(a)(3).  See 42 C.F.R. § 433.36(g)(4).

---

[13] A lien "is a claim or charge on the property of an owner as security for the payment of a debt or obligation owed."  M. Pill, Real Estate Law § 11:1 (2022-2023 ed. 2022) (Pill). Black's Law Dictionary 1107 (11th ed. 2019) (lien is "[a] legal right or interest that a creditor has in another's property, lasting usu[ally] until a debt or duty that it secures is satisfied").  For a TEFRA lien, the "debt" comprises the Medicaid benefits paid on behalf of a member.  See G. L. c. 118E, § 34 (TEFRA lien secures "Medicaid benefits paid or to be paid on [a member's] behalf").

[14] A State Medicaid agency's ability to impose a TEFRA lien is circumscribed further to protect certain family members.  See 42 U.S.C. § 1396p(a)(2) (prohibiting imposition of TEFRA lien against individual's home while individual's spouse; child under age twenty-one or blind or disabled child of any age; or sibling with equity interest in home who was residing there for at least one year immediately before date of individual's admission to medical institution is "lawfully residing" in home).  See also 42 C.F.R. § 433.36(g)(3).

Significantly, TEFRA liens comprise an exception to the Medicaid Act's general prohibition barring State Medicaid agencies from imposing a lien against the property of an individual "prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan."  42 U.S.C. § 1396p(a)(1).

The Medicaid Act provides that States are not required to use TEFRA liens as part of their efforts to recover Medicaid benefits paid.[15]  See 42 U.S.C. § 1396p(a)(1) (setting forth conditions pursuant to which State plan "may" impose TEFRA lien); 42 U.S.C. § 1396p(b)(1)(A) (providing that States shall seek recovery of medical assistance paid on behalf of individual either "from the individual's estate or upon sale of the [encumbered] property" [emphasis added]).  See also Office of Assistant Secretary for Policy and Evaluation, United States Department of Health and Human Services, Medicaid Liens, at 10 (Apr. 2005) (HHS Policy Brief No. 4) (surveys conducted in late 1990s indicated that eighteen of forty-six reporting States employed TEFRA liens).[16]

---

[15] Because the Medicaid Act does not require States to impose TEFRA liens, MassHealth's contention that the Medicaid Act requires State agencies to enforce TEFRA liens after a member's death is unfounded.

[16] Agency policy briefs "do not carry the force of regulations and are not entitled to the deference that we give to regulations that reflect an agency's interpretation of a statute it is obliged to enforce."  Daley v. Secretary of the Executive Office of Health & Human Servs., 477 Mass. 188, 200

In Massachusetts, the Legislature has codified the general prohibition against imposing liens during a member's lifetime other than as expressly authorized by the Medicaid Act; accordingly, it permits MassHealth to impose TEFRA liens. See G. L. c. 118E, § 34 ("No lien or encumbrance of any kind except as permitted by the Secretary [of HHS], shall be required from or imposed against the property of any individual prior to his death because of Medicaid benefits paid or to be paid on his behalf . . ."); 130 Code Mass. Regs. § 515.012(A) (2023) ("A real estate lien enables . . . MassHealth . . . to recover the cost of medical benefits paid or to be paid on behalf of a member. Before the death of a member, . . . MassHealth . . . will place a lien against any property in which the member has a legal interest, subject to" member being permanently institutionalized and inapplicability of protections for certain family members). And because the Medicaid Act requires that a TEFRA lien dissolve upon the discharge of the individual from the medical facility and return home, TEFRA liens in Massachusetts dissolve upon that occurrence. See 130 Code Mass. Regs. § 515.012(E) (MassHealth "will discharge a [TEFRA] lien

_____

(2017). Instead, "we consider such guidance carefully for its persuasive power." Id., citing Wos v. E.M.A. ex rel. Johnson, 568 U.S. 627, 643 (2013).

. . . if the member is released from the medical institution and returns home").

MassHealth maintains that G. L. c. 118E, § 34, which, as discussed supra, governs the imposition and dissolution of TEFRA liens in Massachusetts, also governs the scope of MassHealth's authority to enforce a TEFRA lien; in particular, MassHealth asserts that, because § 34 does not limit enforcement of TEFRA liens (other than requiring dissolution upon the return home of the permanently institutionalized member), TEFRA liens, like liens generally,[17] run with the encumbered property until the underlying debt is satisfied, allowing MassHealth to enforce the lien even after the member's death.

We disagree. While § 34 sets forth the circumstances pursuant to which a TEFRA lien may be imposed and one event pursuant to which the lien shall dissolve, the enforcement

---

[17] In general, a lien encumbers the underlying property until the obligation it secures is satisfied. See generally, L.A. Jones, The Law of Liens (3d ed. 1914). See also Black's Law Dictionary 1107 (11th ed. 2019) (liens last usually "until a debt or duty that it secures is satisfied"). Additionally, "a lien on real property [generally] runs with the land and is enforceable against subsequent purchasers." Permanent Mission of India to the United Nations v. New York, 551 U.S. 193, 198 (2007). See Restatement of Property § 540 (1944) ("a lien is enforceable against the successors in title or possession"). See also Pill, supra at § 11:1 (lien "usually continues even though the ownership of the property is transferred to a third person who does not owe the debt"). TEFRA liens, however, are governed by the Federal and State statutes pursuant to which they are permitted.

authority of MassHealth is delineated expressly in the recovery provisions of the Medicaid Act and the cognate State provisions. See 42 U.S.C. § 1396p(b); G. L. c. 118E, § 31.  In the face of these express provisions, to which we now turn, MassHealth's reliance on § 34 and general principles governing real estate liens is misplaced.

iii.  Estate recovery.  Prior to 1993, when Congress enacted a recovery mandate for States participating in the Medicaid program, the Medicaid Act did not require State Medicaid plans to recoup Medicaid benefits paid.  See Pub. L. No. 97-248, § 132(b), 96 Stat. 370 (1982) (setting forth that State Medicaid recovery "may be made").  In 1993, however, Congress conditioned Federal funding on the States' adoption of estate recovery programs designed, inter alia, to attempt to recoup the costs of Medicaid benefits paid for the care of certain categories of members, including permanently institutionalized members.  See Omnibus Budget Reconciliation Act of 1993 (OBRA '93), Pub. L. No. 103-66, Title XIII, § 13612, 107 Stat. 627 (1993) (codified at 42 U.S.C. § 1396p[b][1]).  Massachusetts complies with this requirement, allowing MassHealth to recover Medicaid assistance paid on behalf of a permanently institutionalized member from, inter alia, the

member's estate.[18]  See G. L. c. 118E, § 31 (a) (1), (b) (1)
(prohibiting MassHealth from recovering Medicaid benefits paid
except "[f]rom the estate of an individual . . . who was an
inpatient in a nursing facility or other medical institution
when he or she received such assistance"); 130 Code Mass. Regs.
§ 515.011 (2023).

Under the Medicaid Act, however, a State plan's recovery
efforts are strictly circumscribed; tellingly, in detailing the
conditions that permit recovery, the act starts with language of
prohibition.  See 42 U.S.C. § 1396p(b)(1) ("No adjustment or
recovery of any medical assistance correctly paid on behalf of
an individual under the State plan may be made, except . . .").
Generally, a State must wait until the individual's death to
recoup Medicaid benefits paid, at which time recovery is
permitted from the decedent's estate subject to certain
additional protections.  See 42 U.S.C. § 1396p(b).

In Massachusetts, as the Medicaid Act requires, the
Legislature carefully circumscribes MassHealth's authority to
recoup Medicaid benefits paid, and generally prohibits

---

[18] The Legislature has authorized Medicaid estate recovery
since 1969.  See St. 1969, c. 800, § 1 ("There shall be no
adjustment or recovery of medical assistance correctly paid,
except from the estate of an individual who was sixty-five years
of age or older . . .").  After the passage of OBRA '93, the
Legislature reorganized and expanded the estate recovery
program.  See St. 1993, c. 161; St. 1995, c. 38, § 133; St.
1997, c. 43, §§ 94-95.

MassHealth from recovering Medicaid expenditures until after the member's death.[19]  See G. L. c. 118E, § 31 (a), (b) ("There shall be no adjustment or recovery of medical assistance correctly paid except . . . [f]rom the estate . . ."); 130 Code Mass. Regs. § 515.011(A)(1) (MassHealth "will recover the amount of payment for medical benefits correctly paid from the estate of a deceased member").  This prohibition against predeath recovery efforts by MassHealth generally also applies to a member who was a "[p]ermanently [i]nstitutionalized . . . inpatient in a nursing facility or other medical institution when he or she received such assistance."  G. L. c. 118E, § 31 (b) (1).  See 130 Code Mass. Regs. § 515.011(A)(1)(b).

    iv.  Enforcing a TEFRA lien.  One exception to this general prohibition against predeath recovery concerns a State agency's ability to recover Medicaid expenses incurred on behalf of a permanently institutionalized member whose real property is subject to a TEFRA lien.  For such a member, the Medicaid Act gives State Medicaid agencies an option; they "shall seek adjustment or recovery from the individual's estate or upon sale of the property" (emphasis added).  42 U.S.C. § 1396p(b)(1)(A).

_____

    [19] Consistent with the Medicaid Act, see 42 U.S.C. § 1396p(b)(2), G. L. c. 118E, § 31 (b) (3), further provides: "Any recovery may be made only after the death of the surviving spouse, if any, and only at a time when he or she has no surviving child who is under age twenty-one or is blind or permanently and totally disabled."

See 42 C.F.R. § 433.36(h)(1)(ii). Thus, if a State agency imposes a TEFRA lien against a permanently institutionalized member's property, which the member thereafter sells, the agency need not wait until the member's death to recoup its Medicaid expenditures; it may enforce a TEFRA lien upon the sale of the encumbered property.[20] Alternatively, the State agency may attempt to recoup its Medicaid expenses following the member's death, from the member's estate. See 42 C.F.R. § 433.36(h) (agency "may make an adjustment or recover funds . . . [f]rom the estate or upon sale of the property subject to a [TEFRA] lien"); State Medicaid Manual, Health Care Financing Administration Pub. No. 45-3, Transmittal 75, § 3810(A)(1) (Jan. 2001) ("Recoveries must be made from the individual's estate (after death) or from the proceeds of the sale of the property on which a lien has been placed").

Because the Medicaid Act specifies that a State agency may enforce a TEFRA lien "upon sale" of the encumbered property, see 42 U.S.C. § 1396p(b)(1)(A), the Medicaid Act permits a State to allow a State agency to enforce the lien either before or after the member's death -- whenever the property is sold. HHS has

---

[20] As discussed in part 3.a.ii, supra, the TEFRA lien dissolves if the permanently institutionalized member is discharged and returns home. See G. L. c. 118E, § 34; 130 Code Mass. Regs. § 515.012(E).

concluded that a TEFRA lien generally may be enforced after the member's death, stating:

> "If the home owner dies with a TEFRA lien still on the property, Medicaid recovery occurs as part of the estate settlement process.  If the property is conferred as part of the recipient's estate to someone without a protected interest in it (e.g., an adult child), the transferee must pay off Medicaid's claim in order to receive a clear title to the property" (emphasis added).

HHS Policy Brief No. 4, supra at 7.  Thus, under the Medicaid Act, unless the permanently institutionalized member is discharged from the medical facility and returns home (at which time the TEFRA lien shall dissolve), a State may opt to allow a TEFRA lien to run with the encumbered property until the underlying debt it secures is paid.  The question in this case is whether the Legislature has opted to take advantage of this available option.

A.  Massachusetts's lifetime sale requirement.  In Massachusetts, as permitted by the Medicaid Act, the Legislature has authorized MassHealth not only to attempt to recover Medicaid expenditures from the estate of a permanently institutionalized member, but also to commence recovery efforts prior to such a member's death under certain conditions.  Specifically, G. L. c. 118E, § 31 (d), provides that MassHealth is "also authorized during [the member's] lifetime to recover all assistance correctly provided . . . if property against

which [MassHealth] has a lien or encumbrance under [§] 34 <u>is</u> <u>sold</u>" (emphases added).

Importantly, unlike the Medicaid Act, under which a State agency's authority to enforce a TEFRA lien can be triggered "upon sale" of the encumbered property regardless of whether that sale occurs before or after the member's death, see 42 U.S.C. § 1396p(b)(1)(A), in Massachusetts, the Legislature has narrowed MassHealth's enforcement authority. Specifically, under the plain language of G. L. c. 118E, § 31 (<u>d</u>), MassHealth's authority to enforce the lien arises "during the [member's] lifetime" if the encumbered property "is sold."[21]

This plain language construction is buttressed by MassHealth's regulation in effect at the time MassHealth placed a TEFRA lien against Mason's home, which expressly reflected that MassHealth's authority to enforce a TEFRA lien arose during the member's lifetime. See 130 Code Mass. Regs. § 515.012(B)

---

[21] Section 31 (<u>d</u>) further provides that the subsection "shall not limit [MassHealth's] ability to recover . . . as otherwise provided under any under general or special law." MassHealth contends that this savings clause permits it to enforce a TEFRA lien after a member's death. As we discussed in part 3.a.ii, <u>supra</u>, however, G. L. c. 118E, § 34, permits MassHealth to impose a TEFRA lien and sets forth a condition requiring the lien to dissolve. By contrast, MassHealth's authority to enforce TEFRA liens is delineated expressly in § 31 (<u>d</u>). Accordingly, § 34 is not a "general . . . law" that "otherwise provide[s]" MassHealth an "ability to recover" following a member's death. G. L. c. 118E, § 31 (<u>d</u>).

(1997) ("If property against which [MassHealth] has placed a lien under 130 [Code Mass. Regs. §] 515.012[A] <u>is sold during the member's lifetime</u>, [MassHealth] may recover all payment for services provided on or after April 1, 1995" [emphasis added]).[22] And while not dispositive, see note 16, <u>supra</u>, HHS has concluded:

> "In Massachusetts, TEFRA liens . . . give the State authority to recover Medicaid payments for a member's long-term care expenses if his or her property is sold while the member is alive. . . .
>
> ". . .
>
> "If there was a [TEFRA] lien on the member's real property, [MassHealth] <u>must release it after they have received notification of the member's death and a copy of the death certificate</u>" (emphasis added).

Office of Assistant Secretary for Policy and Evaluation, United States Department of Health and Human Services, Medicaid Liens

---

[22] After Mason had died, after her estate had been submitted to probate, and after MassHealth had already filed its notice of claim, MassHealth amended the regulation to omit the phrase "during the member's lifetime." See 130 Code Mass. Regs. § 515.012(B) (2021). MassHealth's authority is limited by G. L. c. 118E, § 31 (<u>d</u>); to the extent MassHealth purports to expand its authority through the amended regulation, it cannot do so. See <u>Armstrong</u> v. <u>Secretary of Energy & Envtl. Affairs</u>, 490 Mass. 243, 247 (2022) ("When an agency acts beyond the scope of authority conferred to it by statute, its actions are invalid and ultra vires"); <u>Atlanticare Med. Ctr.</u> v. <u>Commissioner of the Div. of Med. Assistance</u>, 439 Mass. 1, 14 (2003) ("The division has no inherent authority to issue regulations . . . or promulgate rules that conflict with the statutes or exceed the authority conferred by the statutes by which the agency was created" [quotations and citation omitted]).

and Estate Recovery in Massachusetts, at 3, 13 (Apr. 2005) (HHS Policy Brief No. 5).[23]

We reject MassHealth's assertion that while G. L. c. 118E, § 31 (d), governs when MassHealth may enforce a TEFRA lien during a member's lifetime, the statute's silence as to whether a TEFRA lien also may be enforced as part of the estate recovery program implicitly permits such recovery. Such a construction

---

[23] Contrary to MassHealth's assertion that the policy brief is unsupported, the policy brief's conclusions apparently were based on information provided by MassHealth. See HHS Policy Brief No. 5, at 2 n.4 (noting that information for policy brief was "obtained from two operational divisions of MassHealth, the Taunton MassHealth Enrollment Center and the MassHealth Estate Recovery Unit," and that "[a]dditional supporting data and documentation were provided by administrative units within the Office of MassHealth -- the Policy and Implementation Unit, Information Systems, Publications, and the Division of Specialty Programs"). This information is consistent with an audit report, "Office of Medicaid (MassHealth) -- Review of Estate Recovery," published by the Office of the State Auditor on June 28, 2021. In a paragraph concerning TEFRA liens, also referred to as "pre-death" or "living liens," the report stated, "After a member dies, MassHealth may file a claim in probate court to recover the member's paid Medicaid costs" (emphasis added). It says nothing about enforcing a TEFRA lien after the member's death. Similarly, a form notice provided by MassHealth to a permanently institutionalized member against whose home a TEFRA lien is imposed, titled "Notice of Intent to Place a Lien," fails to notify the member that MassHealth may enforce the lien after the member's death. Instead, consistent with G. L. c. 118E, § 31 (d), it provides: "If the property is sold during your lifetime, you must repay MassHealth from your share of the proceeds for the cost of all medical services provided on or after April 1, 1995" (emphasis added). In fact, in its brief, MassHealth acknowledges its long-standing "practice" to enforce a TEFRA lien "if the property is sold during the member's lifetime," and instead to recover from the "assets -- commonly real property -- of the probate estate[]" following the member's death.

is at odds with the Medicaid Act and cognate Massachusetts statutes that narrowly circumscribe the ability of MassHealth to recoup its Medicaid expenses.  As discussed supra, both the Medicaid Act and Massachusetts's statutory recovery schemes are crafted in restrictive terms, generally prohibiting MassHealth from seeking to recover Medicaid benefits paid except from certain individuals and pursuant to carefully delineated circumstances expressly set forth in the statutes.  See 42 U.S.C. § 1396p(b)(1) ("No adjustment or recovery . . . may be made, except . . ."); G. L. c. 118E, § 31 (a), (b) ("There shall be no adjustment or recovery of medical assistance correctly paid except . . .").

That structure evinces a legislative intent to cabin narrowly MassHealth's authority to recover from members, precluding any means of recovery except as affirmatively provided.  See Department of Pub. Welfare v. Anderson, 377 Mass. 23, 27 n.3 (1979) ("The primary purpose of both the Federal and State statutes is to bar recovery . . . .  In both statutes, the clause permitting recovery from the estate . . . appears as an exception and therefore should be construed narrowly").[24]  In

----

[24] Anderson concerned a prior version of the Massachusetts estate recovery statute; however, the structure of the prior statute was, in relevant respects, identical to the current statute.  See G. L. c. 118E, § 16, as inserted by St. 1969, c. 800, § 1, repealed and replaced by St. 1993, c. 161, § 17

light of the statutory scheme's restrictive structure, and absent a provision affirmatively authorizing MassHealth to enforce a TEFRA lien after a member's death, "[w]e will not read into the statute a provision which the Legislature did not see fit to put there" (quotation and citation omitted).[25]  Chin v.

---

("There shall be no adjustment or recovery of medical assistance correctly paid, except from the estate . . .").

[25] Relying on the legislative history of G. L. c. 118E, § 31, MassHealth maintains that the Legislature's use of the term "also" and reference to the date "April 1, 1995," in § 31 (d) signal its intent to allow MassHealth to enforce the TEFRA lien both during the member's life and after the member's death.  MassHealth's argument ostensibly is founded on the 1995 amendment to § 31 (c), which defined the recoverable estate as the probate estate, see St. 1995, c. 38, § 133.  MassHealth claims that the 1995 amendment limiting the definition of "estate" to the probate estate created confusion as to MassHealth's ability to enforce a TEFRA lien during a member's life.  According to MassHealth, the Legislature added § 31 (d) in 1997 to clarify that the TEFRA lien "also" may be enforceable during life.  See St. 1997, c. 43, § 94.  But, MassHealth further contends, the Legislature did not mean to limit MassHealth's preexisting ability to enforce TEFRA liens "also" after a member's death pursuant to its authority under § 34.

As discussed in part 3.a.ii, supra, § 34 sets forth terms concerning the imposition and dissolution of a TEFRA lien, not the enforcement of TEFRA liens.  We decline to adopt MassHealth's posited inference as to the Legislature's intent to preserve its purported ability to enforce a TEFRA lien after a member's death under § 34 in view of, inter alia, the plain language of § 31 (d), as well as the general prohibition on recovery efforts except as expressly authorized.  See Sharris v. Commonwealth, 480 Mass. 586, 594 (2018) ("where the language of a statute is plain and unambiguous, it is conclusive as to legislative intent" [citation omitted]).  Indeed, from 1995 until 2021, MassHealth's regulations regarding TEFRA liens specifically triggered its enforcement authority only upon a sale during the member's lifetime.  See 130 Code Mass. Regs. § 502.910(C) (1995) (permitting enforcement of TEFRA lien if

Merriot, 470 Mass. 527, 537 (2015).  Indeed, such a construction would be at odds with the Legislature's decision to limit the scope of MassHealth's authority to enforce TEFRA liens beyond that required under the Medicaid Act, as evinced by the Legislature's decision to include the phrase "during [the member's] lifetime" in the enforcement provision, G. L. c. 118E, § 31 (d), rather than mirroring the language of the Federal statute, see 42 U.S.C. § 1396p(b)(1)(A).  See discussion, supra.

Our construction of MassHealth's authority to enforce a TEFRA lien also finds support in the purpose that gave rise to the TEFRA lien program, discussed in part 3.a.ii, supra, to thwart efforts by a permanently institutionalized member to evade estate recovery by transferring his or her home, which is usually the member's only significant asset, to a family member. By expressly limiting MassHealth's authority to enforce a TEFRA lien to "during [the member's] lifetime," the Legislature narrowly targeted the estate recovery avoidance tactic that Congress sought to foreclose.  See St. 1997, c. 43, § 94 (enacting G. L. c. 118E, § 31 [d]).

The broad authority MassHealth advocates also runs counter to the Legislature's decision to limit the scope of the

---

property "is sold during the recipient's lifetime"); 130 Code Mass. Regs. § 515.012(B) (1997) (permitting enforcement of TEFRA lien if property "is sold during the member's lifetime"); 130 Code Mass. Regs. § 515.012(B) (2020) (same).

recoverable estate to the "probate" estate.[26]  See G. L. c. 118E,
§ 31 (c).  Significantly, a TEFRA lien may be attached to
ownership interests that may not pass through probate.  See 130
Code Mass. Regs. § 515.012(A) (MassHealth "will place a lien
against any property in which the member has a legal interest").
See also A Practical Guide to Estate Planning in Massachusetts,
Nonprobate Transfers § 3.2 (Mass. Cont. Legal Educ. 5th ed.
2022) (identifying ownership interests that pass outside of
probate, such as inter vivos trusts, joint tenancies with rights
of survivorship, and life estates and remainders).  A

---

[26] Consistent with the restrictive structure of the over-all
statutory scheme, this definition of the recoverable estate
reflects the narrowest scope permissible under 42 U.S.C.
§ 1396p(b)(4).  Under the Medicaid Act, a State either may
delineate the recoverable estate as the probate estate "as
defined for purposes of State probate law," or the State may
elect to define the estate more broadly to include

> "any other real and personal property and other assets in
> which the individual had any legal title or interest at the
> time of death (to the extent of such interest), including
> such assets conveyed to a survivor, heir, or assign of the
> deceased individual through joint tenancy, tenancy in
> common, survivorship, life estate, living trust, or other
> arrangement."

42 U.S.C. § 1396p(b)(4).  In 2003, Massachusetts briefly
expanded the recoverable estate to the broader permissible
definition, before reverting to the narrow probate-only
definition the following year.  See St. 2003, c. 26, § 329; St.
2004, c. 149, § 167.  This choice, in conjunction with the
restrictive language of G. L. c. 118E, § 31, evinces a
legislative intent to restrict MassHealth's ability to pursue
recovery outside of the probate estate, through other
mechanisms, such as liens.

construction that would allow MassHealth to enforce a TEFRA lien after a member's death would expand the estate against which MassHealth could recover beyond the probate estate.  Such a construction would be at odds with the legislative decision to limit estate recovery to the probate estate.  See Plymouth Retirement Bd., 483 Mass. at 605 (in construing statutes, we "look to the statutory scheme as a whole . . . so as to produce an internal consistency within the statute" [quotations and citations omitted]).

Further, a construction that would permit MassHealth to enforce a TEFRA lien after the member's death contravenes the Legislature's specific delineation of the relative priorities of various creditors, including MassHealth, in connection with the disposition of a probate estate.  See G. L. c. 190B, § 3-805 (a) ("If the applicable assets of the estate are insufficient to pay all claims in full, the personal representative shall make payment in the following order:  . . . [6] debts due to the division of medical assistance").  If a TEFRA lien survives a member's death, the lien might upset the MUPC's express priority of claims provision.[27]  See Metcalf, 492 Mass. at 681 (we

_____

[27] The MUPC grants lienholders additional rights beyond those available to unsecured estate creditors.  See G. L. c.  190B, §§ 3-104, 3-803, 3-809, 3-812, 3-814.  See also Tisbury v. Hutchinson, 338 Mass. 514, 516 (1959) (lien gave lienholder priority over estate administration expenses and other estate creditors).

interpret statutes "in harmony with prior enactments to give rise to a consistent body of law" [quotation and citation omitted]).

B. _Limited post-death enforcement authority_.  Relying on G. L. c. 118E, § 32 (j), MassHealth contends that the Legislature broadly contemplated the disposition of TEFRA liens in connection with the member's estate.  Section 32 (j) provides:

> "If the personal representative wishes to sell or transfer any real property against which [MassHealth] has filed a lien or claim not yet enforceable because circumstances or conditions specified in [G. L. c. 118E, § 31,] continue to exist,[28] [MassHealth] shall release the lien or claim if the personal representative agrees to (1) either set aside sufficient assets to satisfy the lien or claim, or to give bond to [MassHealth] with sufficient surety or sureties and (2) repay [MassHealth] as soon as the circumstances or conditions which resulted in the lien or claim not yet being enforceable no longer exist.  Notwithstanding the foregoing provision or any general or special law to the contrary, [MassHealth] and the parties to the sale may by agreement enter into an alternative resolution of [MassHealth]'s lien or claim." (Emphases added.)

---

[28] Section 32 (j)'s cross reference to the protections for certain family members addressed in G. L. c. 118E, § 31, indicates that the "lien" referenced in § 32 (j) is the TEFRA lien of § 31 (d).  In fact, a TEFRA lien is the only type of lien that MassHealth may impose, except in the case of a court-ordered lien for improperly paid benefits, in which case no protections for family members apply.  See HHS Policy Brief No. 5, at 7 ("in Massachusetts a lien is only filed while the member is still alive" and is "never placed . . . once the member has died").  See also G. L. c. 118E, § 16C (a), as inserted by St. 1990, c. 150, § 300, repealed by St. 1992, c. 133, § 470, (briefly authorizing postdeath liens).

While the interrelationship between § 31 (d) and § 32 (j) is not a model of clarity, we do not construe the latter as impliedly expanding the unequivocally narrow authority to enforce a TEFRA lien expressly set forth in the former.  See Patel v. 7-Eleven, Inc., 489 Mass. 356, 364 (2022), quoting Whitman v. American Trucking Ass'ns, 531 U.S. 457, 468 (2001) ("the Legislature 'does not, one might say, hide elephants in mouseholes'").

Instead, we construe § 32 (j) to address only the specific circumstance in which MassHealth is prohibited under § 31 (d) from enforcing the lien while the member is living, despite a lifetime sale of the encumbered property, because of the continued presence of protected relatives.[29]  In this

---

[29] Under § 31 (d), even after MassHealth's authority to enforce the lien is triggered by a lifetime sale, "[r]epayment shall not be required" while certain protected family members lawfully reside in the property.  The protected family members are:

"(1) a sibling who had been residing in the property for at least one year immediately prior to the individual being admitted to a nursing facility or other medical institution; or (2) a child who (i) had been residing in the property for at least two years immediately prior to the parent being admitted to a nursing facility or other medical institution; and (ii) establishes to the satisfaction of [MassHealth] that he provided care which permitted the parent to reside at home during that two year period rather than in an institution; and (iii) has lawfully resided in the property on a continuous basis while the parent has been in the medical institution."

circumstance, MassHealth's right to enforce a TEFRA lien ripens upon the sale of the encumbered property during the member's lifetime, but the lien is "not yet enforceable."[30]  G. L. c. 118E, § 32 (j).  If the member then dies, § 32 (j) permits the lien to be resolved as part of the estate recovery process.[31]

G. L. c. 118E, § 31 (d).  See also 130 Code Mass. Regs. § 515.012(D)(1).  These restrictions also are embodied in the Medicaid Act.  See 42 U.S.C. § 1396p(b)(2)(B); 42 C.F.R. § 433.36(h)(2)(iii).

[30] If recovery is deferred, § 31 (d) provides several options for MassHealth to preserve its ability to recover Medicaid benefits paid:

> "If repayment is not yet required because a relative specified above is still lawfully residing in the property and the individual wishes to sell the property, the purchaser shall take possession subject to the lien or [MassHealth] shall release the lien if the [permanently institutionalized member] agrees to (1) either set aside sufficient assets to satisfy the lien or give bond to the division with sufficient sureties and (2) repay [MassHealth] as soon as the specified relative is no longer lawfully residing in the property.  Notwithstanding the foregoing or any general or special law to the contrary, [MassHealth] and the parties to the sale may by agreement enter into an alternative resolution of [MassHealth's] lien."

G. L. c. 118E, § 31 (d).  Notably, § 32 (j) gives the personal representative seeking to sell an encumbered property the same options previously available to the member.  See G. L. c. 118E, § 32 (j).

[31] Section 31 (d) is triggered only if the member sells the encumbered property during his or her lifetime, and so presumably the property generally would no longer be in the member's estate, making the reference in § 32 (j) to a personal representative's authority to dispose of the encumbered property nugatory.  But that may not be true always.  Section 32 (j) captures this limited circumstance.

In such a circumstance, MassHealth may enforce the lien after the member's death as set forth in § 32 (j).[32]  Thus, we conclude that MassHealth generally is not authorized to enforce a TEFRA lien after the member's death, except in the very narrow circumstance addressed by § 32 (j), as discussed supra.

b.  Applicability of the MUPC time limit.  We turn to the second question on appeal -- whether the "ultimate time limit" provision of the MUPC, G. L. c. 190B, § 3-108, which became effective as of 2012, bars MassHealth's claim[33] against Mason's estate.  The ultimate time limit provision[34] precludes a creditor

---

[32] Fearing that assets available for estate recovery may dissipate before MassHealth is permitted to open probate, see G. L. c. 118E, § 32 (i), MassHealth urges us to conclude that it may enforce a TEFRA lien after a member's death to enhance its estate recovery efforts.  Such policy arguments are best directed to the Legislature; they do not control our construction of the statute.

[33] As discussed supra, regardless of whether a TEFRA lien is enforceable after a member's death, MassHealth may recover its Medicaid expenses by asserting a timely claim against a member's estate through the estate recovery procedures authorized by G. L. c. 118E, § 31 (b), and prescribed in § 32 (a)-(i).

[34] The ultimate time limit provision, G. L. c. 190B, § 3-108, states, in relevant part:

"No informal probate or appointment proceeding or formal testacy or appointment proceeding . . . may be commenced more than [three] years after the decedent's death, except that:  . . . (4) an informal appointment or a formal testacy or appointment proceeding may be commenced thereafter if no proceedings relative to the succession or estate administration has occurred within the [three] year period after the decedent's death, but the personal representative shall have no right to possess estate assets

from bringing a claim against an estate more than three years after a decedent's death.  See Kendall, 486 Mass. at 527-528.[35] However, under the statute in effect when Mason died, MassHealth has fifty years from the date of Mason's death -- a period of time that had commenced to run prior to the MUPC's effective date -- to press its claim.  See G. L. c. 193, § 4, inserted by St. 1951, c. 163, § 1, repealed by St. 2008, c. 521, § 13 (generally requiring administration of estates within fifty years).[36]  Thus, the ultimate time limit bars MassHealth's claim only if it applies retroactively.

Absent a clear indication of legislative intent, a statute presumptively operates prospectively only.  See Sliney v. Previte, 473 Mass. 283, 288 (2015); Federal Nat'l Mtge. Ass'n v.

_____

as provided in [§] 3-709 beyond that necessary to confirm title thereto in the successors to the estate and claims other than expenses of administration shall not be presented against the estate" (emphases added).

[35] Contrary to the petitioner's contention, Kendall does not address the question whether § 3-108 applies retroactively to bar claims against the estate of a decedent who died before the effective date.  See generally Kendall, 486 Mass. at 527-528. The petitioner also mistakenly asserts that Department of Pub. Welfare v. Anderson, 377 Mass. 23 (1979) -- a case that predates the MUPC -- controls the outcome here.

[36] The petitioner contends that MassHealth surrendered its claim by waiting nine years after Mason's death, until the petitioner opened probate proceedings, to assert it.  The petitioner relies on G. L. c. 118E, § 32 (i), which permits MassHealth to commence probate proceedings itself if no petition for probate has been filed within one year of the decedent's death.  Section 32 (i) is permissive, however, not mandatory.

Nunez, 460 Mass. 511, 516 (2011) ("As a general matter, all statutes are prospective in their operation . . . and [have] no retroactive effect" [quotation and citation omitted]).  This presumption applies to statutes of repose such as § 3-108.  See In re Granderson, 214 B.R. 671, 675-676 (Bankr. D. Mass. 1997), cited with approval by First Fed. Sav. & Loan Ass'n v. Napoleon, 428 Mass. 371, 373-374 (1998) (concluding statute applied only prospectively because it was statute of repose not statute of limitations).[37]

Here, the Legislature expressed its intent that the current version of the ultimate time limit, G. L. c. 190B, § 3-108, as amended by St. 2012, c. 140, § 14, apply prospectively.  Specifically, St. 2012, c. 140, § 66 (b), provides:

"If a right is acquired, extinguished or barred upon the expiration of a prescribed period that has commenced to run under any other statute before the effective date of this act, that statute shall continue to apply to the right even if it has been superseded."[38]

---

[37] Section 3-108 is a statute of repose.  Kendall, 486 Mass. at 528, 529, 533.

[38] The petitioner contends that § 66 (b) applies only to the trust code, and not to the probate code, because § 66 (a) addresses the trust code.  However, § 66 (b) references the "act" as a whole, referring clearly to "An Act further regulating the Probate Code and establishing a trust code" (emphasis added).  Indeed, § 14 of the act amended G. L. c. 190B, § 3-108.

Similarly, St. 2008, c. 521, § 43 (4), which applies to the MUPC's original enabling act, and thus to the original version of the ultimate time limit, provides:

> "[A]n act done before the effective date [of the MUPC] in any proceeding and any accrued right is not impaired by this act. If a right is acquired, extinguished or barred upon the expiration of a prescribed period of time which has commenced to run by the provisions of any statute before the effective date, the provisions shall remain in force with respect to that right."[39]

Because Mason died on August 18, 2008, prior to the July 8, 2012, effective date of G. L. c. 190B, § 3-108, pre-MUPC time limits control MassHealth's claim against her estate. See Massachusetts Probate Manual, Formal Probate § 4.2.4 (Mass. Cont. Legal Educ. 5th ed. 2022) ("Estates of decedents dying before the effective date of the MUPC are not governed by this time limit for filing"). In other words, following Mason's

---

[39] Notably, the specific preservation language of § 43 (4), preserving accrued rights that were acquired, extinguished, or barred upon the expiration of a prescribed period that has commenced to run before the effective date, controls our analysis despite the more general provision of the act, St. 2008, c. 521, § 43 (2), which provided that the MUPC applied to court proceedings commenced after the act's effective date. See Wing v. Commissioner of Probation, 473 Mass. 368, 373 (2015) ("where statutes deal with the same subject, the more specific statute controls the more general one"). In addition, § 43 (2) addressed procedure, while the ultimate time limit provision, as a statute of repose, addressed substantive rights. See Bridgwood v. A.J. Wood Constr., Inc., 480 Mass. 349, 352 (2018) (noting that statutes of limitations are "a procedural defense" whereas statutes of repose provide "a substantive right to be free from liability" [quotations and citation omitted]).

death in 2008, MassHealth's "right" to make a claim under G. L.
c. 118E, § 32 (b), would be "extinguished or barred upon the
expiration of a prescribed period of time which has commenced to
run by the provisions of [former G. L. c. 193, § 4,] before the
effective date" of the MUPC. Additionally, MassHealth's claim
against Mason's estate is a "right" that "accrued" on Mason's
death in 2008, when it became enforceable.[40] See 42 U.S.C.
§ 1396p; G. L. c. 118E, § 31 (b) (1). In sum, MassHealth's
right to file a claim against the decedent's estate falls within
the nonretroactive language of St. 2012, c. 140, § 66 (b), and
St. 2008, c. 521, § 43 (4), and is unaffected by the MUPC's
ultimate time limit.[41] Therefore, we conclude that MUPC's three-
year ultimate time limit provision does not extinguish
MassHealth's claim against Mason's estate.[42]

---

[40] See Black's Law Dictionary 1582 (11th ed. 2019) (defining
"accrued right" as "[a] matured right; a right that is ripe for
enforcement [as through litigation]").

[41] Our decision in American Family Life Assur. Co. v.
Parker, 488 Mass. 801 (2022), is not to the contrary. That case
concerned G. L. c. 190B, § 2-804. See id. at 807-810.

[42] The petitioner contends that our construction frustrates
the "speedy and efficient" settling of estates. G. L. c. 190B,
§ 1-102. Here, the Legislature expressly has indicated its
intent not to apply the ultimate time limit to claims like
MassHealth's in this case, as set forth supra. Moreover, simply
because "retroactive application of a new statute would
vindicate its purpose more fully . . . is not sufficient to
rebut the presumption against retroactivity" (citation omitted).
Smith v. Massachusetts Bay Transp. Auth., 462 Mass. 370, 377
(2012).

4. <u>Conclusion</u>.  So much of the order of the Probate and Family Court judge as dismissed MassHealth's claim against the decedent's estate is reversed; the order is otherwise affirmed, and the matter is remanded for further proceedings consistent with this opinion.

<u>So ordered</u>.